## POPE v. LEWIS.

1. No judgment can be rendered in an action brought to recover a penalty by a common informer, after the repeal of the statute giving the penalty, unless some special provision for that purpose be made by statute.
2. The commencement of a suit for the penalty does not give a vested right to it, but will entitle the party so suing to a preference over one suing subsequently.

ERROR to the County Court of Mobile.

This was a *qui tam* action by the defendant against the plaintiff in error, for selling rope and bagging without inspection.

The Court charged the jury, that if they found the defendant guilty under the third section of the act, on which the action is founded, their verdict should be for the plaintiff. That the repeal of this act by the last Legislature could not affect the plaintiff's right—to which the defendant excepted.

Various other points were made in the cause, which are not noticed in the opinion of the Court.

CAMPBELL, for plaintiff in error, argued that the repeal of the statute was a discharge of the action. [2 N. H. Rep, 105; 1 Gall. 192; 3 Peters, 57; 18 Maine, 109; 1 Breese, 115; 6 Wend. 526; 2 Bailey, 584; 1 N. H. 61; 6 Cranch, 329; 5 id. 281; 2 Dana, 330.]

LESESNE and STEWART, contra, insisted that the right to the penalty vested in the informer, on the commencement of the action. [5 Bro. Parl. Cases, 75; 2 Har. Dig. 509; 2 Peters Rep. 657; 16 Mass. 330; 2 Conn. 321.]

That the King cannot release the portion given to the informer after action brought. [2 Coke, 65, b.; Cro. Eliz. 138; 1 Bac. Ab. 61.]

That the true distinction was between the repeal of an act affecting the remedy, and the repeal of one giving a right. In

the former case no right is taken away, but may be enforced in some mode.

They insisted that the question here, was, not what the Legislature might do, but what it had done, and that was, whether, by construction, it can be presumed that the Legislature meant to divest a right. That a retrospective effect is never given to a law by construction. [2 Shower, 16; 15 Maine, 134; 7 Johns. 477; 4 Ser. & R. 401; Breese Rep. Sup. 29; 3 Moore & Payne, 143.]

ORMOND, J.—The principal question in this cause is, whether any judgment can be rendered in an action founded on a penal statute after its repeal?

The counsel for the defendant in error, maintain, that by the commencement of this suit, for the penalty prescribed by statute, for selling rope and bagging without inspection, the defendant acquired a vested right in the penalty, which the subsequent repeal of the statute by the Legislature, cannot deprive him of.

As it is very certain that vested rights, properly so called, are beyond the control of the Legislature, it becomes necessary to inquire on what foundation this assumption rests. It will not be contended that the right which vests in a common informer to a penalty, for which he has commenced a suit, stands upon the same footing with his right to property acquired by purchase, or by his labor. Laws may aid in protecting him in the enjoyment of his property, or assist him in reclaiming it from a wrong doer, but his right to property thus acquired exists independent of written law, and is beyond the control of the Legislature.

The foundation of the claim to a penalty prescribed by law, is derived entirely from the statute authorizing a judgment to be rendered in favor of any one who will sue for it. This claim is imperfect until a judgment is rendered for it, when the right to the money becomes perfect, or, in other words, it becomes an absolute vested right. Blackstone, in the third volume of his Commentaries, [160,] places this right on the implied contract supposed to be entered into by each member of the society, to be bound by its fundamental laws. Without, however, entering into any subtle speculation as to the source

of the power exercised by the Legislature in the passage of such laws, it is very clear that a judgment obtained according to the forms and under the sanction of prescribed law, must, while the society exists, be the very highest evidence that the debt or duty to enforce which the judgment was rendered, is the property of him in whose favor it was rendered. It is therefore one of his vested or absolute rights which the Legislature cannot control. It follows, necessarily, that as the right to the penalty is inchoate until judgment, if, from any cause, no judgment can be rendered for the penalty, the absolute or vested right to it can never exist.

It cannot admit of doubt that the Legislature may, at its pleasure, repeal any penal law, and it is equally well settled, that after such repeal no judgment can be rendered, either of corporal punishment or pecuniary fine. In the language of Judge Marshall, in Yeaton v. The United States, [5th Cranch, 281,] "it has long been settled on general principles, that after the expiration or repeal of a law, no penalty can be enforced nor punishment inflicted, for violations of the law, committed while it was in force, unless some specific provision for that purpose be made by statute." To the same effect is the Schooner Rachel v. The United States, 6 Cranch, 329; United States v. Preston, 3 Peters, 57; The Commonwealth v. Welch, 2 Dana, 330; The People v. Livingston, 6 Wendell, 526; Lewis v. Foster, 1 N. Hamp. 61.

In opposition to the view here taken, we have been referred to the case of Couch v. Jeffries, [4 Burrows, 2460.] That was an action *qui tam*, brought to recover the penalty for not paying the stamp duties upon an indenture of apprenticeship. The plaintiff obtained a verdict, after which an act of Parliament was passed declaring that in all cases where a forfeiture had accrued, if the duty was paid by a certain time, and the indentures produced to be stamped, the offender should be discharged for the penalty. The defendant having paid the duty within the time, moved for a rule against the plaintiff to restrain him from entering up judgment. The Court held that it was not the intention of Parliament that the act should apply to suits then in existence, but merely to bar future actions, and Lord Mansfield observed, that the argument urged in favor of the

defendant would equally prove, "that if the judgment had been signed and execution taken out, and the money afterwards paid into the stamp office, the levied money ought to be refunded."

In this case it is to be observed that the law creating the penalty was not repealed, but a subsequent act was passed relieving those from the penalty who paid the duty into the stamp office by a certain time. It was therefore a mere question of construction, as to the meaning of the last law, and the Court very equitably at least, held that it was only intended to bar future actions, after the duty was paid. In a word, the only question presented to the Court was, whether the last law should be retrospective in its character, or operate in future. It is not perceived how this decision can aid us in the investigation of this part of the case. So far as it may be supposed to bear on the construction of the repealing statute, it will be hereafter adverted to.

We have also been referred to the case of Grossel v. Ogilvie, [5 Brown Parl. Cases, 75.] In that case, an information had been filed in the Court of Exchequer, in Scotland, by Grossel v. Ogilvie, upon a penal statute for relanding tobacco, after obtaining a certificate for exporting it without being impelled thereto by stress of weather, which was the offence for which the penalty was given. To the information the defendant pleaded a subsequent act of Parliament of indemnity, to which the prosecutor demurred. The Court in Scotland gave judgment on the demurrer for the defendant. On appeal to the House of Lords this judgment was reversed and judgment rendered for the King and the informer, upon the ground that the act of indemnity, pleaded in bar of the information, did not embrace the case made by the information. We cannot discover that this case has any application to the one at bar—all that is decided is, that the act of indemnity of 18 George 2d, did not release or discharge the penalties imposed by the 8th Ann, c. 13, for relanding tobacco, upon which a certificate had been obtained for exportation. It was not a question of law as to the effect of a repeal of the statute, but whether in point of fact there was such a repeal as was alledged.

It does not militate against the view here taken, that by the commencement of a suit an informer obtains a right to the pe-

nalty against, or rather in preference to, one suing subsequently for the same penalty, although the latter may first obtain judgment. It would open a door to fraud and collusion were it not so, as it would be in the power of the defendant, by omitting to make defence to the last suit, to give the penalty to one who might be in collusion with him, and thus, in effect, make the law operate as a penalty upon the party first suing. When, therefore, the law gives the right to sue for a penalty, it must, in the nature and reason of the thing, be to him who first asserts his right to it.

It is also true, as urged, that the King cannot, by a release, discharge the offender from that portion of the penalty which goes to the informer, and this not because he has an absolute vested interest in the penalty, before judgment, but because his right, though inchoate and contingent, is given by law, and therefore not within the control of the King. Any control or interference with it by the Executive Magistrate, would be the exercise of the odious power of dispensing with the law—the portion going to the State he may release.

It is further uged that the repeal of a penal statute prevents the rendition of judgment only in cases where the entire penalty goes to the State. We think this position untenable, both on principle and authority. The cases cited from 5th and 6th Cranch, were both cases in which a moiety of the penalty went to the revenue officers of the United States, making the seizure under the 90th section of the act to " Regulate the collection of duties on imposts and tonnage." [1 Story's Laws U. S. 655.] The case of the United States v. Preston, [3 Peters, 57,] is still stronger. An act of Congress empowered the State of Louisiana to pass laws for disposing of such persons of color as should be imported or brought into that State contrary to law. Pursuant thereto the State passed a law directing the sale of all such negroes, and appropriated the proceeds. A seizure was made and the negroes sold for a violation of this act of Congress, after which, and pending an appeal, to the Supreme Court, the act of Congress was repealed, and the Court held that the right of the State was extinct. The same principle was decided in Lewis v. Foster, 1 N. H. 61 ; in the Commonwealth v. Welch, 2 Dana, 331 ; and in the People v. Livingston, 6 Wendell, 529 ; and, as we are informed, in the case ci-

ted from 2d Bailey, 584. In all these cases the right of individuals came in question.

Nor is it easy to perceive how, on principle, any other decision could be made. It has been shown that this class of rights is inchoate, derived from, and dependent on, the statute which gave them birth. It is, in effect, a transfer by the State to one of its members, of a penalty forfeited to the body politic and it is difficult to perceive upon what principle the transferee could enfore it when the transferror could not.

It has been strenuously urged that the true construction of the repealing statute is, that it is not to operate on suits actually brought, as that would be to give the repealing statute a retrospective effect. The general principle in regard to statutes certainly is, that they are not, by construction, to have a retrospective effect, as has been repeatedly held by this Court, and at the present term. But there is no room for construction here. The repealing statute (acts of 1~30, '31,) absolutely, and without reservation, puts an end to the act thus repealed, and as to all penalties and forfeitures created by it, and not ascertained by judgment, it is as if it never had existed. The effect of a reservation, or saving, in the repeal of a penal statute, as to suits commenced under it, is to continue the statute in force *quoad* such suits.

To hold then that this unqualified repeal of the act, was no repeal as to this case, would be a palpable act of legislation under the mask of construction. The principle that no penalty can be enforced after the repeal of the statute creating it without express provision to that effect in the repealing statute is recognized in all the cases we have cited.

In the case cited from 4th Burrows, 2460, and already commented on, the penal statute was not repealed, and the question whether the subsequent statute relieving against the forfeiture, applied to suits there brought, for the penalty was one of pure construction, with the correctness of which we have no concern in this case. It is to be observed too, that there the informer had obtained a verdict, and nothing remained to be done but the mere formal act of signing judgment, and, as Lord Mansfield observed, the objection would apply with equal force if judgment had been formally entered. It was doubtless in reference to these facts, that eminent Judge spoke

of the right of an informer as a "*vested right*"—language which could not be appropriately applied to the mere commencement of a suit for the penalty.

Whether the obligations of good faith would not require the State to refund money actually expended in the prosecution of a suit authorized by it, and to reimburse its citizens for costs incurred by the repeal of the law, is a question which must be addressed to another forum.

The judgment here pronounced is at variance with the opinion of this Court in the case of Taylor v. Rushing, [2 Stewart, 160,] and in accordance with the previous opinion pronounced in The State v. The Tombeckbe Bank, [1 Stewart, 347.] In the first mentioned case, it does not appear, from the report of the case, that the point arose in judgment, and the cases cited from Cranch are, by the Court in that case, attempted to be answered, by supposing that the United States alone was interested in the penalty. In this the Court were clearly mistaken. The case in 2d Stewart must be overruled.

Let the judgment be reversed.