683 So.2d 994 (1996)
Ex parte Grace Wills BRANNON.
(In re Grace Wills BRANNON v. David McGOWAN and Shirley McGowan).
1950761.
Supreme Court of Alabama.
August 9, 1996.
*995 Joseph P. Hughes, Geneva, for Petitioner.
Henry F. Lee III and David W. Rousseau, Geneva, for Respondents.
HOUSTON, Justice.
On August 16, 1982, David McGowan and Shirley McGowan purchased a house from Grace Wills Brannon for $28,000. The McGowans paid Brannon $3,600 as a down payment; they were to pay $1,400 on January 10, 1983, and the balance of $23,000 was to be paid in monthly installments over 15 years, beginning on September 15, 1982, with Brannon providing seller financing. At the time of the transaction, Brannon executed and delivered to the McGowans a deed to the property and the McGowans executed and delivered to Brannon two promissory notes and a mortgage. One of the promissory notes was for the $1,400 due on January 10, 1983, and the other promissory note was for the $23,000 balance that was payable in monthly installments. The mortgage repayment provision provided:
"That Whereas, David McGowan and Shirley McGowan, husband and wife, ... are justly indebted to Grace Wills Brannon... in the sum of Twenty-three Thousand and no/100 Dollars ($23,000.00) evidenced by a note of even date herewith providing for the payment of $1,400.00 on January 10, 1983, and a note of even date herewith providing for the payment of principal and interest in one hundred eighty (180) monthly installments of $279.75 each, commencing on the 15th day of September, 1982, and continuing on the 15th day of each month thereafter until said indebtedness is paid in full."
The mortgage further stated that the notes given to secure the purchase price were "to be paid according to the terms and installments as set out above." There was no provision for prepayment.
The McGowans paid the $1,400 note as required and paid monthly installments on the $23,000 note through June 15, 1994. Thereafter, the McGowans stopped making payments. Before discontinuing the payments on the $23,000 note, the McGowans asked Brannon to give them a payoff figure. Brannon told the McGowans that she did not want the indebtedness paid in advance, but that if they insisted on doing so, she wanted the principal amount due plus the interest she would have earned had the note been paid in accordance with its terms. The McGowans never tendered that amount.
Subsequently, the McGowans sued, seeking a judgment declaring that they had the right to prepay, without payment of unearned interest, the promissory note that was payable in monthly installments and that they had the right to secure a release of the mortgage. The McGowans also sought damages for Brannon's refusal to accept a payoff of the note. Brannon counterclaimed for the past due installments (for the months July through December 1994) in the amount of $1,678.50, interest, attorney fees, and costs. The trial court, after conducting an ore tenus hearing, entered a judgment for the McGowans, declaring that they had the right to satisfy the note and mortgage held by Brannon by paying to Brannon the principal amount due after the June payment ($10,039.71), plus interest on that amount at the rate of 12.25% per annum, until the principal was paid and that upon such payment, the note and mortgage would be satisfied in full and Brannon would be required to satisfy the mortgage of record. The judgment also denied the McGowans' claim for damages; denied Brannon's counterclaim; provided that the parties would be responsible for their own attorney fees; and taxed costs against the McGowans. Brannon appealed, contending that the trial court erred in allowing the McGowans to prepay their mortgage, because, *996 she argued, the accurate rule of law is that absent an agreement of the parties, a mortgagor cannot unilaterally force a mortgagee to accept prepayment of a debt.
The Court of Civil Appeals affirmed, noting that "[t]he traditional common law proposition [which was based on the reasoning that allowing prepayment could cause inconvenience to mortgagees who often extend credit as an investment] is that when there is no contrary statutory authority, or agreement between the parties, a mortgagor generally has no right to pay off the obligation before the stated maturity date," but stating that "there has been a trend to change the prevalent common law rule, both statutorily and judicially," citing authorities, including Ala. Code 1975, § 5-19-4(c).[1]Brannon v. McGowan, 683 So.2d 991, at 992 (Ala.Civ. App.1995).
According to the Court of Civil Appeals, "[T]he better reasoning is found in the opinion of the Pennsylvania Supreme Court [in Mahoney v. Furches, 503 Pa. 60, 468 A.2d 458 (1983), a case factually similar to this case], which reversed the common law rule prohibiting prepayment in favor of a presumption that, when loan documents are silent regarding prepayment, the debtor has the right to prepay." 683 So.2d at 992. In adopting the reasoning of the Pennsylvania Supreme Court in Mahoney, the Court of Civil Appeals held that "the old common law rule [prohibiting prepayment when loan documents are silent regarding prepayment] is inconsistent with another common law rule; absolute restraint of the power of alienation is void as against public policy." 683 So.2d at 993.
Judge Crawley dissented, maintaining that the court was bound by the common law rule unless it had been abrogated by the legislaturethat any deviation from the common law was within the province of the legislature, not the judiciary. 683 So.2d at 993.
In addressing the dissent and explaining the majority's deviation from the common law, the majority of the Court of Civil Appeals stated that while the dissent accurately stated the law, "`the common law is not static, but is constantly undergoing change, and extension, to meet changing conditions, due to the ever expanding business and social fabric.'" 683 So.2d at 993 (quoting Woodmen of the World Life Ins. Soc. v. Guyton, 239 Ala. 216, 220, 194 So. 655, 658 (1940)).
Brannon petitioned for certiorari review, which we granted to determine whether the maker of a promissory note, secured by a real estate mortgage and payable in monthly installments, has a right to prepay the indebtedness, without payment of the unearned interest, and secure the release of the mortgage lien, when loan instruments are silent as to prepayment.
It is undisputed that when Brannon and the McGowans entered into the contract for the sale of the house, the applicable rule of law was the common law rule that when there is no contrary statutory authority and no contrary agreement between the parties, a mortgagor generally has no right to pay off the obligation before the stated maturity date. Even if we agreed with the Court of Civil Appeals that the common law rule pertaining to prepayment needed to be changed, we could not do so in this case without impairing the obligations of the contract between Brannon and the McGowans.
This State has a strong preference for protecting contractual obligations. The Constitution prohibits the impairment of contractual obligations by the legislative and judicial branches of state government. See Art. I, § 22, Ala. Const. of 1901 ("nor any law, impairing the obligations of contracts,... shall be passed by the legislature"), and Art. IV, § 95, Ala. Const. of 1901 ("[t]here can be no law of this state impairing the obligation of contracts by destroying or impairing the remedy for their enforcement"). See International Underwriters/Brokers, Inc. v. Liao, 548 So.2d 163 (Ala.1989); Milton Construction Co. v. State of Alabama *997 Highway Department, 568 So.2d 784 (Ala. 1990); 17 Am.Jur.2d Contracts § 178 (1964).
Brannon was 69 years old when she entered into this contract; she made it as an investment to supplement her Social Security income in later years. The contract was based upon the then-existing lawthe common law rule that when loan documents are silent regarding prepayment the debtor has no right to prepay. Courts should not change contract law years after parties have entered an agreement based on the law that was in effect when they entered it; rather, such a change should be a matter for the legislature and such a change should apply only to those contracts entered into after the enactment of the legislation.
Ala.Code 1975, § 1-3-1, states:
"The common law of England, so far as it is not inconsistent with the Constitution, laws and institutions of this state, shall, together with such institutions and laws, be the rule of decisions, and shall continue in force, except as from time to time it may be altered or repealed by the legislature."
We find no compelling reason, and no compelling changes in institutions, customs, mores, or conditions, to justify changing the common law rule pertaining to prepayment. Nor do we agree that a prohibition of prepayment constitutes an "absolute restraint" on alienation. The property could be sold or transferred subject to the mortgage, or the debt could be paid and the mortgage satisfied and the property then sold.
The judgment of the Court of Civil Appeals is reversed and the case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
MADDOX, SHORES, and COOK, JJ., concur.
KENNEDY, J., concurs in the result.
HOOPER, C.J., and INGRAM, and BUTTS, JJ., dissent.
HOOPER, Chief Justice (dissenting).
The common law rule as stated by the majority is that when there is no contrary statutory authority and no contrary agreement between the parties, a mortgagor generally has no right to prepay a mortgage obligation. However, this rule is based on an inaccurate view of the common law and modern investing. Today, both finance and the law recognize the principle of "present value." According to that generally accepted principle, the value of a future stream of payments today, i.e., its present value, is equal to the total of the future stream of payments discounted by an appropriate interest rate. The purpose of interest is to pay the creditor for the lost present use of money. If the creditor receives the money early, then there may be no need for the interest.
The Supreme Court of Pennsylvania changed the common law rule on the presumption of the right to prepay a mortgage obligation in Mahoney v. Furches, 503 Pa. 60, 468 A.2d 458 (1983). The Pennsylvania Supreme Court stated that the common law "presume[d], simply from the absence of a clause so allowing, that a mortgagor could not pay off his debt and alienate his land as he so desired." That Court added: "Instead, we think it wiser to raise a presumption of a right to prepayment of the note where a mortgage is silent as to that right. This presumption could be rebutted by showing a contrary intent mutually manifested by the parties." 503 Pa. at 64-66, 468 A.2d at 461. This Court should adopt this modification of the common law.
The majority reverses a judgment allowing prepayment of the loan. It does so in the name of upholding contract obligations. However, the McGowans are not seeking to violate the contract. They are giving to Brannon the full benefit of the credit arrangement provided for in the contract. A mortgage is a substitute for full payment by the purchaser of the price of real property, and it is intended for the benefit of the purchaser. In other words, instead of making payment in full for a piece of property, the seller allows the purchaser to delay the payment into the future. Prepayment by the purchaser means the purchaser voluntarily gives up that benefit. It is certainly not a detriment to the seller for the purchaser to fulfill the obligation of the sale contract earlier *998 than originally anticipated. Payment in full is more advantageous for both parties.
The majority states that this Court is bound to apply the common law unless it has been abrogated by the legislature and that, even if this Court wished to change the common law, doing so in this case would impair the obligations of the parties. The common law evolved in the courts of England and America as a means of fitting legal principles into the common life of people. It is not an inflexible constitutional provision. Courts alter the common law in order to meet the needs of a changing world. Legal principles remain unchanged; technology, finance, and other things affecting our lives change dramatically. Legal rules are changed to reflect the changed reality without altering principles.
As for the common law rule on prepayment, the history of the rule prohibiting prepayment is not as clear as the majority suggests. Frank S. Alexander, in his historical study of the rule has written:
"For the past one hundred and fifty years legal scholarship has assumed that a borrower's inability to prepay mortgage indebtedness without the lender's consent was a principle embedded in the common law since its early beginnings. A reexamination of the leading cases and commentaries, however, reveals that this assumption is unjustified. To the contrary, this principle first emerged as a rule of law in the nineteenth century, when major shifts in the economic aspects of residential finance provided the impetus for transformation [in the law.]"
"The history of mortgage law from the fourteenth through the eighteenth centuries actually suggests that a debtor could redeem property from the mortgage upon payment of the full indebtedness at any time prior to the final due date.... Nonetheless, subsequent cases and treatise writers uncritically accepted the holdings in Abbe and Brown [the 1829 and 1845 cases rejecting prepayment] and the concept of perfect tender in time became the rule of law."
Frank S. Alexander, Mortgage Prepayment: The Trial of Common Sense, 72 Cornell L.Rev. 288, 289, 292 (1987).
Another principle that equity courts applied from the 14th through the 18th centuries was the rule of reciprocity. That rule stated that because the mortgagee had the right upon default by the mortgagor to demand immediate and full early payment, then the mortgagor also had the right to make early payment in full in order to extinguish the debt. Howard v. Harris, 23 Eng. Rep. 406 (Ch. 1683); Alexander, at 307. That rule changed in the early 19th century when currency fluctuations made it possible for mortgagors to take advantage of mortgagees by prepayment with devalued dollars. "[T]he maker of a note, who had received the whole amount of it, should not be permitted to pay it off with a depreciated currency." Tillou v. Britton, 9 N.J.L. 120, 137 (1827). In the 19th century, the rule of reciprocity came to be, instead, that because the mortgagee could not demand early payment in full without a default by the mortgagor, then the mortgagor could not voluntarily make early payment.
To say that this Court cannot allow for prepayment of a mortgage is to ignore the purposes and reasons that underlie the common law. Redemption, created as an extra-contractual right of the mortgagor, was originally a creation of equity courts. As for equity's approach to prepayment, "equity courts placed the emphasis on the debt itself; the property merely provided security for payment of the debt. Timing of the debt's payment was of little consequence so long as the debt was paid by the date specified." Alexander, at 341. If Brannon wants to continue to receive a stream of monthly payments as income, modern finance allows her to use the amount received upon prepayment to purchase an annuity. That is the beauty of a modern financial system. It allows for more financial freedom, not less. Yet, the majority follows an outdated rule that would force the McGowans to remain in debt although they have the means and the will to free themselves from that debt.
*999 The common law rule applied in this case has a questionable pedigree. It also cannot be reconciled with modern financial practices. Thus, this Court should conform the law to present-day financial and social realities, as the proper application of the common law requires. Considering today's low interest rate, payment of principal only may not fully compensate Brannon. Brannon and the McGowans could negotiate a payment amount that would equal the present value of the remaining mortgage payments. In such an arrangement, and because there is no clause in the contract prohibiting or requiring prepayment, there would be no impairment of the contract obligation. I agree with the Court of Civil Appeals. I would adopt the rule that in the absence of a contrary contractual intent by the parties, the maker has the right to prepay a promissory note, as pre-19th century common law apparently allowed. Therefore, I must respectfully dissent.
INGRAM, J., concurs.
NOTES
[1] Ala.Code 1975, § 5-19-4(c), provides that in certain circumstances a debtor may prepay before maturity without penalty. That section applies only in the case of creditors who "regularly extend or arrange for the extension of credit." Ala.Code 1975, § 5-19-1(3). Therefore, § 5-19-4(c) is not applicable to this case, because Brannon was not in the business of regularly extending credit or arranging for the extension of credit.