723 So.2d 617 (1998)
UNITED COMPANIES LENDING CORPORATION
v.
Cecil AUTREY et al.
1970246.
Supreme Court of Alabama.
August 14, 1998.
Rehearing Denied October 16, 1998.
*618 M. Christian King and Wynn M. Shuford of Lightfoot, Franklin & White. L.L.C., Birmingham; and John N. Leach, Jr., of Helmsing, Sims & Leach, P.C., Mobile, for appellant.
George W. Finkbohner III and Royce A. Ray III of Finkbohner & Lawler, L.L.C., Mobile, for appellees.
John R. Chiles and Christopher J. Willis of Sirote & Permutt, P.C., Birmingham, for amici curiae Alabama Lenders Ass'n, Alabama Financial Services Ass'n, and Alabama Mortgage Brokers Ass'n.
H. Hampton Boles, Alan T. Rogers, and N. DeWayne Pope of Balch & Bingham, L.L.P., Birmingham, for amici curiae Alabama Bankers Ass'n and Automobile Dealers Ass'n of Alabama, Inc.
KENNEDY, Justice.
The question presented in this appeal is whether amendments to a section of the Code of Alabama may constitutionally be given retroactive effect "given that these amendments were enacted after the class members' contracts had been consummated, after this lawsuit had been pending more than two years, and after the class had been certified." (Trial court's order, C.R. 1544.) The plaintiffs were charged 8% in points on mortgage loans from United Companies Lending Corporation ("UCLC"), although § 5-19-4(g), Ala.Code 1975, prohibited lenders from charging points in excess of 5%. At the time UCLC made the loans, at the time the plaintiffs filed their complaint, and at the time their action was certified as a class action, § 5-19-19, Ala.Code 1975, provided for damages to be awarded in an action filed by debtors who had been charged illegal, excessive finance charges. The amount of recoverable damages increased if the creditor did not respond to a written demand for a refund and if the creditor made the excess finance charge in deliberate violation of, or in reckless disregard for, the law. Later, the Legislature amended § 5-19-19 to reduce the amount of damages recoverable by debtors who are charged excess finance charges.
The trial court held that a retroactive application of that amendment to the plaintiffs' claims in this action would violate Article I, § 13; Article I, § 22; and Article IV, § 95, of the Alabama Constitution of 1901.
Article I, Section 13, declares:
"That all courts shall be open; and that every person, for any injury done him, in his lands, goods, person, or reputation, shall have a remedy by due process of law; and right and justice shall be administered without sale, denial, or delay."
Section 22 declares:
"That no ex post facto law, nor any law, impairing the obligations of contracts, or making any irrevocable or exclusive grants of special privileges or immunities, shall be passed by the legislature; and every grant or franchise, privilege, or immunity shall forever remain subject to revocation, alteration, or amendment."
Article IV governs the Legislative Department. Section 95 therein declares:
"There can be no law of this state impairing the obligation of contracts by destroying or impairing the remedy for their enforcement; and the legislature shall have no power to revive any right or remedy which may have become barred by lapse of time, or by any statute of this state. After suit has been commenced on any cause of action, the legislature shall have no power to take away such cause of *619 action, or destroy any existing defense to such suit."

(Emphasis added.)
UCLC petitioned for, and this Court granted, permission to appeal from the interlocutory order of the circuit court holding that the statutory amendment could not be retroactively applied to the plaintiffs' claims. Rule 5, Ala. R.App. P. The only question presented is the amount of damages recoverable, i.e., whether the amendment reducing allowable damages applies to these plaintiffs' claims.
The action pending in the Mobile Circuit Court is a class action requesting damages as provided for in § 5-19-19, Ala.Code 1975, as that section read at the times pertinent to this action and until its amendment by Act No. 96-576, 1996 Ala. Acts p. 887. Section 5-19-19 is part of the Mini-Code, which the legislature enacted in 1971. Act No. 2052, 1971 Ala. Acts p. 3290. Until the May 20, 1996, amendment of § 5-19-19 by Act No. 96-576, that section had remained unchanged since the enactment of the Mini-Code in 1971. Section 5-19-19 was codified from Act No. 2052, § 15, which read:
"Any creditor charging a finance charge in excess of the amount authorized herein except as the result of an accidental and bona fide error in computation, shall forfeit his right to any finance charge and shall refund to the debtor the total amount of the finance charge, which may be done by reducing the amount of the debtor's principal obligation. If the debtor is entitled to a refund and the creditor refuses to refund within a reasonable time after written demand, the debtor may recover a penalty of either twice the finance charge or ten times the amount of the excess charge, whichever is greater, but in any event not less then $100, together with a reasonable attorney's fee. If the creditor has made an excess finance charge in deliberate violation of or in reckless disregard for this Act, the creditor shall have no right to receive or retain the principal or any finance charge whatsoever and the transaction shall be void. No action under this section may be brought more than one year after due date [sic] of the last scheduled payment of the agreement pursuant to which the charge was made or in the case of open end credit plans, one year after the excess charge is made."
This present action pertains to consumer home mortgage loans made by UCLC to members of the plaintiff class in 1991. Cecil Autrey and Willie Mae Autrey, husband and wife, filed a complaint against UCLC on April 20, 1994, alleging that UCLC had violated § 5-19-4(g), which prohibits creditors from charging "points" in excess of 5% of the original principal balance of the loan. The Autreys amended their complaint on May 11, 1994, to allege claims on behalf of a class of similarly situated plaintiffs. UCLC charged 8% in points on the mortgage loans that are the subject of the class allegations. On June 6, 1994, UCLC removed the action to a federal court; on January 3, 1995, after extensive proceedings, the federal court remanded the cause.
On April 10, 1995, four additional persons filed a motion to intervene as plaintiffs, and the circuit court granted that motion on June 5, 1995. Through discovery, 910 members of the plaintiff class were identified. On September 8, 1995, the plaintiffs, acting pursuant to the provisions of § 5-19-19, demanded a refund of the finance charges to all of the named plaintiffs and all of the class members. UCLC did not respond to this request, and the plaintiffs' attorney filed an affidavit on January 12, 1996, stating that "therefore, more than four (4) months have passed since the written demand, and Defendant UCLC has declined within a reasonable time after written demand to refund the finance charges." On January 9, 1996, the circuit court certified the action as a class action, pursuant to Rule 23(b)(3), Ala. R. Civ. P.
On January 12, 1996, the plaintiffs filed a motion for a partial summary judgment, based on the circuit court's holding in a similar case that UCLC was not exempt from the provisions of the Mini-Code. On January 17, UCLC opposed that motion and sought a stay of a ruling on it until an interlocutory appeal from that holding in that other case was decided by this Court. On February 26, the circuit court granted the requested stay. The appeal in question was *620 decided on October 11, 1996. United Companies Lending Corp. v. McGehee, 686 So.2d 1171 (Ala.1996). This Court affirmed the holding that UCLC is not exempt from the Mini-Code. The Supreme Court of the United States denied certiorari review. 520 U.S. 1197, 117 S.Ct. 1555, 137 L.Ed.2d 703 (1997).
Meanwhile, on May 20, 1996, the Governor approved Act No. 96-576. That Act revised several sections of the Mini-Code, including § 5-19-19, which it completely rewrote. That section now reads, in pertinent part:
"(a)(1)(i) Any creditor charging a finance charge in excess of the amount authorized herein, except as specified in subdivision (2), shall forfeit debtor's actual economic damages not to exceed the finance charge, and shall refund to the debtor such amount of the actual economic damages, which may be done by reducing the amount of the debtor's obligation. If the debtor is entitled to a refund and the creditor refuses to refund within a reasonable time, not to exceed 60 days, after written demand, including the filing of a legal action, the debtor shall recover a penalty of five times the amount of the actual economic damages not to exceed the finance charge, but in any event not less that one hundred dollars ($100). Provided, however, as to any legal action pending on May 20, 1996 [the effective date of Act No. 96-576], the debtor shall make a new written demand under this subsection.
"....
"(2) If the creditor has made an excess finance charge in deliberate violation of or in reckless disregard for this chapter, the creditor shall forfeit the greater of the entire finance charge imposed or five times the amount of the actual economic damages, but not less than one hundred dollars ($100). No action under this subsection may be brought more than one year after the due date of the last scheduled payment of the agreement pursuant to which the charge was made or, in the case of an open-end credit plan, one year after the excess charge is made."
Section 4 of Act No. 96-576 reads:
"The amendments to Sections 5-19-19, except subsections (a)(1)(ii) and (e), 5-19-22, except subsection (h), and 5-19-31 are retroactive and are to be applied to consumer credit transactions entered into on, before, and after the effective date of this act. The amendments to all other sections in this act not specifically stated to be retroactive in this Section 4 shall be prospective in nature and shall be operative only as to transactions entered into after the effective date of this act."
The amendment substantially reduces the damages that may be recovered from a creditor charging an excess finance charge.
The plaintiffs filed a motion to have the amendments to § 5-19-19 declared unconstitutional to the extent that they would apply to this pending action. The attorney general was properly served, as provided for in § 6-6-227, Ala.Code 1975. On May 28, 1997, after proceedings on this motion, the circuit court granted it.
In its appeal, UCLC argues first that the plaintiffs do not have a cause of action under § 5-19-19 at all, because the remedy for the wrongs alleged comes, UCLC says, not from § 5-19-19 but from § 5-19-11. Section 5-19-11(b), as amended by Act No. 90-384, 1990 Ala. Acts p. 526,[1] provided:

"Except where other specific remedies are provided in this chapter for violations of specific provisions of this chapter in which event such remedies shall apply, any provision of a consumer credit transaction which violates the provisions of this chapter shall be unenforceable by the creditor to the extent, but only to the extent, of such violation, and the other remaining provisions and agreements shall not be affected by such violation. Any creditor who fails to comply with any requirement imposed under this chapter with respect to any person is liable to such person for the *621 actual damage sustained by such person as a result of the failure."
(Emphasis added.) Thus, § 5-19-11(b) was a catchall or residual remedy for violations as to which no specific remedy was otherwise provided in the Mini-Code. UCLC argues that § 5-19-19 did not provide a remedy for the wrongs alleged by the plaintiffs because the charging of points in excess of 5% is not the charging of an excess finance charge, citing Williams v. E.F. Hutton Mortgage Corp., 555 So.2d 158 (Ala.1989).
Three simple propositions demonstrate that § 5-19-19 provides a cause of action for a violation of § 5-19-4(g): (1.) Points are a "finance charge":
"For the purposes of this chapter, the following terms shall have the meanings respectively ascribed to them by this section:
"(1) FINANCE CHARGE. Such term shall include all charges payable directly or indirectly by the debtor and imposed directly or indirectly by the creditor as an incident to the extension of credit, including interest, time price differential, points or discount paid directly by the debtor, service, carrying or other charge however denominated, or loan fee.... For the purpose of determining the permissible finance charge, any discount or point paid by debtor in connection with a mortgage loan on real estate, even though paid at one time, shall be spread over the stated term of the loan or forbearance or credit sale."
§ 5-19-1 (emphasis added).[2] (2.) Points may not exceed 5%. § 5-19-4(g). (3.) Section 5-19-19 provides the amount a debtor may recover from a creditor who charges a finance charge that exceeds the amount allowed by the Mini-Code, which includes all of chapter 19 of title 5, Ala.Code 1975.
UCLC relies on the last sentence of the definition in § 5-19-1(1) for its argument that a claim based on a violation of § 5-19-4(g) is not within the terms of § 5-19-19. However, that sentence simply allows points to be "spread over the stated term of the loan" for "the purpose of determining the permissible finance charge." This applies to the "maximum finance charge" provided by § 5-19-3(a), but not to the limitation on points in § 5-19-4(g), because the "spread[ing] [of the 5% points limitation] over the stated term of the loan" would have no effect. Section 5-19-3(a)'s maximum finance charge is expressed as a certain amount per year. As to § 5-19-3(a)'s maximum finance charge, a prepaid finance charge such as points could cause a greatly inflated finance charge in the first year if the points were not "spread over the stated term of the loan." However, that problem has no bearing on the flat prohibition against charging points in excess of 5%. In short, a charge for points in excess of 5% is an excess finance charge within the meaning of § 5-19-19, and the language at the end of § 5-19-1(1) does not affect this fact.
The circuit court held that retroactive application of the amendments to § 5-19-19 would violate §§ 22 and 95 of the Constitution by impairing the obligations of the contracts evidenced by the notes and mortgages between the plaintiffs and UCLC and by "destroying or impairing the remedy for their enforcement," § 95. The court held that § 5-19-4(g)'s prohibition of points in excess of 5% and § 5-19-19's original provisions for damages to be awarded for making an excess finance charge were part of the obligations of the contracts, by operation of law.
"It is elemental that `the law enters into and defines the obligation of every contract' and that `[a]ll men are charged as matter of public policy with a knowledge of the law pertaining to their transactions.' Birmingham Bar Ass'n v. Phillips & Marsh, 239 Ala. 650, 656, 196 So. 725 [(1940) ]. And `every contract is made with reference to existing law and every law affecting the contract is read into and becomes a part of the contract when made.' Bush v. Greer, 235 Ala. 56, 58, 177 So. 341 [ (1937) ]."
Barber Pure Milk Co. v. Alabama State Milk Control Bd., 275 Ala. 489, 494, 156 So.2d 351, *622 355 (1963). As Justice Houston correctly held in Ex parte Brannon, 683 So.2d 994 (Ala.1996):
"This State has a strong preference for protecting contractual obligations. The Constitution prohibits the impairment of contractual obligations by the legislative and judicial branches of state government. See Art. I, § 22, Ala. Const. of 1901 (`nor any law impairing the obligations of contracts,... shall be passed by the legislature'), and Art. IV, § 95, Ala. Const. of 1901 (`[t]here can be no law of this state impairing the obligation of contracts by destroying or impairing the remedy for their enforcement')."
683 So.2d at 996. Each of the plaintiffs' promissory notes stated, "I agree that this Note and loan are to be governed under Alabama law."
UCLC responds by arguing that the damages recoverable under the original § 5-19-19 constitute a penalty and that the legislature can remit a penalty before it is enforced. It says that this principle, too, should be considered as incorporated into the contracts. However, we hold that the plaintiffs' right to recover damages under 5-19-19 was part of the obligations of the contracts, within the meaning of §§ 22 and 95 of the Constitution, and was the "remedy for their enforcement," within the meaning of § 95. Furthermore, their right of recovery had vested, within the meaning of § 13 of the Constitution, and any attempt to reduce the damages recoverable in this action would violate the last sentence of § 95, which states: "After suit has been commenced on any cause of action, the legislature shall have no power to take away such cause of action, or destroy any existing defense to such suit."
As to UCLC's argument that the damages are merely a penalty that the legislature could constitutionally remit, rather than a vested right for which the plaintiffs had a cause of action, and, for that matter, a pending action, the cases relied upon do not support a retroactive application of this amendment to these plaintiffs.
In City of Mobile v. Merchants National Bank of Mobile, 250 Ala. 159, 33 So.2d 457 (1948), this Court held that the rate of interest applicable to redemption could be reduced after the execution of the debt and the security instruments that were later foreclosed. The Court held that the reduction in that rate was not an impairment of the obligations of the contracts. This holding was based on a conclusion that so much of the interest rate that exceeded the legal interest rate, 6%, was a penalty and could be remitted by the legislature.
However, the reduction in the interest rate took place before the debt was in default, before the foreclosure, and before the redemption. Absent a default and a foreclosure, there is no question of a redemption, much less the interest to be paid upon a redemption. Thus, as to the parties in City of Mobile, there was no injury, no obligation of contract to be impaired, and no vested right affected when the legislature decreased the interest rate to be paid upon redemption. The Court held that the legislature could constitutionally reduce the interest rate for a redemption before the bonds were foreclosed. City of Mobile simply does not present a question of a reduction in an amount recoverable by a plaintiff after the plaintiff's right to recover that amount has accrued and after the plaintiff has filed an action for damages based on that accrued right.
Another case that figures prominently in the law cited by UCLC is distinguishable in the same way as City of Mobile. In Ewell v. Daggs, 108 U.S. 143, 2 S.Ct. 408, 27 L.Ed. 682 (1883), the Supreme Court of the United States held that a repeal of the Texas usury laws by an adoption of a new constitution for the State of Texas applied so as to defeat a defense of usury as to a contract entered into before the adoption of that constitution. However, the question there was the application of Art. I, § 10, U.S. Const., not the constitutional provisions at issue here. "[T]he decisions of the Supreme Court... cannot exert any controlling influence upon the courts of the several states when those courts are proceeding according to their own practice, and within the constitutional limits of their own State Constitution; no federal question being involved." Kraas *623 v. American Bakeries Co., 231 Ala. 278, 282, 164 So. 565, 568 (1935).
Moreover, Ewell v. Daggs is further distinguishable because of the Court's decision not to apply a Texas case cited by the appellant:
"The case of Smith v. Glanton, 39 Tex. 365 [ (1873) ], cited and relied on by counsel for the appellant, we cannot accept as a settlement of the law of Texas to the contrary. The opinion does not consider the question, but dismisses it, on the assumption that the fact that the action was brought before the adoption of the Constitution which contained the repeal of the usury laws, prevented the application of the rule."

108 U.S. at 151, 2 S.Ct. 408 (emphasis added). It is understandable that Ewell relied on Smith v. Glanton, 39 Tex. 365 (1873), because the report of that case includes the statement, appearing as headnote 1 of the reporter's summary, that "The Constitution repealing usury laws did not legalize usurious contracts of date prior to its adoption." 39 Tex. at 365. The opinion of the Supreme Court of Texas does not, however, unambiguously support that statement, so it cannot be said that the Supreme Court of the United States, in disregarding that reporter's headnote, refused to follow Texas law that would have decided the case in Ewell's favor. However, the Smith v. Glanton opinion squarely holds that the adoption of the 1870 Texas constitution did not affect usury defenses in actions filed before the adoption of that constitution. The trial court had denied a plea "that usurious interest was contracted for and paid by [the defendants] in an amount sufficient to extinguish the note." 39 Tex. at 366. The Supreme Court of Texas reversed a judgment for the plaintiff, holding that the usury defense should have been allowed:
"It is possible his honor the district judge may have applied to this case the provision contained in the 44th Section of the 12th Article of the Constitution.
"Respect should, however, have been paid to the fact that this suit was commenced in May, 1867, long before the adoption of the present Constitution.
"The law applicable to this case, if, indeed, the contract was originally usurious, is contained in Article 3942, Paschal's Digest.[[3]]
"If a greater amount of interest than that allowed by law was contracted for, then the jury should have been instructed to apply the payments to the principal of the debt.
"The plea of usury was a proper defense, and should have been admitted; and if the defendant had evidence to offer under it, he should have been permitted so to do.
"No usurious contract is permitted to escape the vigilant inquest of a court of equity."
Smith v. Glanton, 39 Tex. at 366.
The statements relied upon by UCLC from Ewell and City of Mobile, therefore, are not so broadly applicable as to support a retroactive application of the amendment to § 5-19-19. The same is true of the other cases relied upon by UCLC. City of Mobile v. Merchants National Bank, supra, includes the following statement:
"`[A] mere penalty never vests, but remains executory; the repeal of a statute before a penalty is enforced is not a deprivation of vested rights.' 23 Am.Jur. p. 632. And `The power of the legislature to remit a penalty is too well settled to admit of controversy.' 25 C.J., page 1213, § 156; 36 C.J.S. Fines, § 18. See also Pope v. Lewis, 4 Ala. 487 [ (1842) ]; Owen v. Peebles, 42 Ala. 338 [ (1868) ]; Broughton v. Branch Bank, 17 Ala. 828 [ (1850) ]; U.S. v. Morris, 23 U.S. 246, 10 Wheat. 246, 6 L.Ed. 314 [ (1825) ]."
250 Ala. at 163, 33 So.2d at 460. As we have shown above, there was no vested right in City of Mobile to recover the former interest rate that the Court held to be a penalty, because that rate had been reduced before the bonds had gone into default. Similarly, the cases of this Court that are cited in the quotation above were cases in which the *624 plaintiff sued not based on an injury, but only on a statute that imposed a penalty that was not contingent upon the plaintiff's having suffered an injury.
In Pope v. Lewis, 4 Ala. 487, 488 (1842), Lewis filed a qui tam action against Pope "for selling rope and bagging without inspection." Lewis was spoken of as "a common informer." Id. Broughton v. Branch Bank at Mobile, 17 Ala. 828 (1850), was an action against a sheriff to recover a penalty for failure to return an execution within the time allowed by law. An 1848 statute was held to have repealed any right to recover the penalty. Owen v. Peebles, 42 Ala. 338, 339 (1868), was "a proceeding for the settlement of the accounts of a deceased guardian by his executor." The ward sought to disallow a credit to the guardian's account of an amount of the ward's money that was invested in Confederate bonds. An 1861 statute authorized such an investment by a guardian, but required the guardian to make a report of the investment to the proper court. If the guardian failed to make the report or to show good cause for not making the report, the statute disallowed a credit to the guardian for this use of the ward's funds. The Court allowed retroactive application of an 1866 act that repealed the penalty for failing to make the report if the ward was not injured thereby, but held that, if the ward could show that he had been injured, he was entitled to recover for his injury.
Thus, the proposition that the legislature may remit a penalty cannot constitutionally apply when a person has suffered a legal injury and has a cause of action for the recovery of damages based on that injury. Both § 13 and § 95 of the Constitution of 1901 prohibit the legislature from taking away a vested right § 13 does so regardless of whether an action has been brought upon the right, and § 95 does so after "suit has been commenced," i.e., after an action has been filed.
"[Section 13] of the Constitution provides `that every person, for an injury done him, in his lands, goods, person, or reputation, shall have a remedy by due process of law.' It will be noticed that this provision preserves the right to a remedy for an injury. That means that when a duty has been breached producing a legal claim for damages, such claimant cannot be denied the benefit of his claim for the absence of a remedy. But this provision does not undertake to preserve existing duties against legislative change made before the breach occurs."

Pickett v. Matthews, 238 Ala. 542, 545, 192 So. 261, 263 (1939) (emphasis added).
When the notes and mortgages in question were made and given, § 5-19-4(g) prohibited a creditor from charging points in excess of 5%. Nevertheless, UCLC did so in the notes executed by the members of the plaintiff class. The obligations under those notes are governed by the prohibition in 5-19-4(g) of points in excess of 5% and by the provision in the original § 5-19-19 that in the case of an excess finance charge a debtor can recover the entire finance charge or the greater amounts specified therein for the higher degrees of wrongful conduct described. The plaintiffs suffered a legal injury when UCLC charged the excess points.
We affirm the order of the trial court. The obligations of the plaintiffs' contracts were determined in 1991, when they made the notes and gave the mortgages to UCLC. Those obligations included the law, as stated in § 5-19-4(g), that a creditor was prohibited from charging points in excess of 5% and, in the original § 5-19-19, that a creditor charging an excess finance charge was required to return the finance charge or a higher amount as specified therein. The plaintiffs filed their action in April 1994, they made specific written demands in September 1995 for return of the finance charge, and their action was certified as a class action in January 1996. Section 5-19-19 was not amended until May 1996. A retroactive change in § 5-19-19 would impair the obligations of the plaintiffs' contracts, in violation of §§ 22 and 95 of the Constitution of Alabama of 1901; it would destroy vested rights, in violation of § 13 of the Constitution; and it would take away the plaintiffs' cause of action, in violation of § 95 of the Constitution.
AFFIRMED.
*625 ALMON, SHORES, and COOK, JJ., concur.
HOUSTON, J., concurs in the result.
HOOPER, C.J., and MADDOX and SEE, JJ., dissent.
LYONS, J., recuses himself.
HOUSTON, Justice (concurring in the result).
I am on the horns of a dilemma! I can dissent and allow a Special Justice to decide this case, or I can concur in the result and satisfy myself that this decision will not jeopardize the fundamental law of Alabama.
I adhere to the views I expressed in my dissent in United Companies Lending Corp. v. McGehee, 686 So.2d 1171, 1179-83 (Ala. 1996), and my special writing in Ex parte Watley, 708 So.2d 890, 898-99 (Ala.1997); and I fervently believe 1) that United Companies Lending Corporation is an approved mortgagee under the provisions of the National Housing Act and that it is exempt under Ala.Code 1975, § 5-19-31, from the provisions of Alabama's Mini-Code; and 2) that Ala.Code 1975, § 5-19-4, did not amend § 8-8-5. However, this Court has held otherwise. If I continue to dissent, by disregarding the doctrine of stare decisis, there will be a 4-4 division on this Court, and it will be necessary for the appointing authority to appoint a Special Justice to cast the deciding vote in this case. In my opinion, a Special Justice should be and would be bound by this Court's decisions in McGehee and Watley. Following the doctrine of stare decisis, I concur in the result, for the following reasons.
I am persuaded that some of the statements of law in Justice Kennedy's writing in this case are erroneous, even if the holdings in McGehee and Watley are the law. If I dissented to the opinion as a whole, and a Special Justice was appointed, then these erroneous statements might also become holdings of this Court. To keep this from happening, I concur in the result.
I am satisfied that the 1996 amendments to the Mini-Code did not violate Article I, § 13, of the Alabama Constitution of 1901. See Tyson v. Johns-Manville Sales Corp., 399 So.2d 263, 269 (Ala.1981), and State Board of Optometry v. Lee Optical Co., 284 Ala. 562, 226 So.2d 623 (1969). Justice Kennedy's conclusion to the contrary causes me to fear that the specter of Grantham v. Denke, 359 So.2d 785 (Ala.1978), may be returning to deprive the Alabama legislature of its constitutional right to make and to change the law. In his dissent in Fireman's Fund American Ins. Co. v. Coleman, 394 So.2d 334, 355-58 (Ala.1980), Justice Beatty exposed the fallacy upon which Grantham was based, and in my opinion in Reed v. Brunson, 527 So.2d 102 (Ala.1988), I forcefully demonstrated why the holding in Grantham should never have been the law. I do not want the holding in Grantham reestablished as the law in Alabama. I am also satisfied that the 1996 amendments did not violate Article I, § 22, of the Constitution. See Ewell v. Daggs, 108 U.S. 143, 150-51, 2 S.Ct. 408, 27 L.Ed. 682 (1883), and Reynolds v. Lee, 180 Ala. 76, 60 So. 101 (1912). I dissent as to Justice Kennedy's statements with respect to these issues (i.e., his statements that applying the 1996 amendments to § 5-19-19 to these plaintiffs' claims would violate § 13 and § 22), so that those statements do not become holdings of this Court.
The plaintiffs commenced this action before the legislature amended the Mini-Code in May 1996. The legislature's otherwise permissible retroactive remission of the statutory penalty set out in § 5-19-19, see City of Mobile v. Merchants National Bank of Mobile, 250 Ala. 159, 163, 33 So.2d 457, 460 (1948), cannot pass constitutional muster in this particular case, because the legislature amended § 5-19-19 after the plaintiffs had filed this action. Article IV, § 95, of the Constitution provides: "After suit has been commenced on any cause of action, the legislature shall have no power to take away such cause of action...." A "cause of action" is defined in Black's Law Dictionary (6th ed.1990) as "[a] situation or state of facts which would entitle [a] party to sustain [an] action and give him [the] right to seek a judicial remedy in his behalf." When they filed this action, the plaintiffs had a particular remedy under § 5-19-19. That remedy included the right to collect a penalty for a lender's making an excessive finance charge. *626 By amending § 5-19-19 and reducing the penalty portion of the plaintiffs' statutory remedy, the legislature impermissibly impinged upon the plaintiffs' cause of action. The last sentence in § 95, which is clear on its face, provides a "safe harbor" for these particular plaintiffs.
I do not reach the question of what the plaintiffs are entitled to under § 5-19-19 as it read before the 1996 amendment.
I concur in the result only.
HOOPER, Chief Justice (dissenting).
There is one point that would moot the entire question in this case. The Mini-Code does not apply to real estate loans over $2,000 in value. Section 8-8-5, Ala.Code 1975, applies. See my special writing in Ex parte Watley, 708 So.2d 890 (Ala.1997) (Hooper, C.J., concurring in the result). United Companies Lending Corporation ("UCLC") should not be liable at all under § 5-19-4(g). The market determines when points are excessive. I believe that is why the legislature reduced the maximum amount of the loans subject to Mini-Code treatment from $100,000 to $2,000. The loan to the named plaintiffs in this case was far above $2,000; therefore, the Mini-Code does not apply.
However, the problems in the lead opinion do not end with the misapplication of the Mini-Code. If I were to accept the application of § 5-19-19 to UCLC in this case, I would still dissent. The damages in this case could potentially include the forfeiture of principal the plaintiffs borrowed from UCLC. I question why UCLC should be held to have been aware of the requirement that it not charge more than 5% in points. In United Companies Lending Corp. v. McGehee, 686 So.2d 1171 (Ala.1996), this very Court was unable to determine whether United was under such a restriction until it was reviewing the case on rehearing. This Court's first opinion in that case had stated that, based on federal law, United was not bound to that requirement.
The lead opinion has also turned the "impairment of contracts" clause of the constitution on its head. In this case, the plaintiffs made an agreement with UCLC. The constitution should protect that agreement from interference by the civil government. Not in this case. The lead opinion interprets § 95 of the constitution in this way: The statute giving the plaintiffs the right to recover principal and interest from a company that charges more than 5% as points is incorporated into the contract between UCLC and the plaintiffs; any change in the damages that can be awarded to the plaintiffs is an impairment of that contract. Never mind that § 95 mentions nothing about the damages that can be awarded. It reads in part: "There can be no law of this state impairing the obligation of contracts by destroying or impairing the remedy for their enforcement...." The change in the damages portion of the particular statute in question does not impair or destroy the remedy of the enforcement of the contract between the plaintiffs and UCLC. The remedy is to refund any excess points charged. The amended statute does not impair that remedy.
Section 5-19-19, as it read before May 20, 1996, established the condition for a plaintiff to recover the principal of a loan: "If the creditor has made an excess finance charge in deliberate violation of or in reckless disregard for this chapter, the creditor shall have no right to receive or retain the principal or any finance charge whatsoever and the transaction shall be void." Even taking § 5-19-19 as it read before May 20, 1996, how can this Court, which came to the "right" conclusion in McGehee, only after two attempts, conclude that UCLC's act of charging 8% and not refunding the interest is "reckless?" Was this Court's original opinion in McGehee "reckless?" Such decisions truly call for the public's ire against what appears to be hypocrisy on the part of the judiciary. I know of nothing more destructive of justice than to call a party's acting lawfully and legitimately to defend its rights a deliberate disregard for the law and therefore worthy of punishment. UCLC, just like this Court, did not know that the Mini-Code applied the 5% limit to its business. If, at the time UCLC entered into this agreement with the plaintiffs, this Court did not know and had not issued an opinion indicating that a lender such as UCLC could not charge over 5%, how is UCLC to be charged with reckless or intentional conduct?
This discussion leads to the issues presented in BMW of North America, Inc. v. Gore, *627 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). One of the three "guideposts" the United States Supreme Court set up in that case for determining a constitutional award of punitive damages was "reprehensibility." Without notice that a particular action could result in liability, a defendant cannot be held liable for engaging in that activity. That is why the trial court in BMW could not hold the defendant BMW liable for actions it had taken in other states where its conduct was not considered tortious. That analysis also bears on the question of UCLC's reprehensibility in this case. Because UCLC did not have notice that it was subject to the 5% limit, the reprehensibility element, so necessary for punishing a defendant, is lacking in this case.
The lead opinion justifies the heavy penalty because the penalty is based on a statute. However, in Gore the United States Supreme Court placed no such condition on its analysis of a punitive award. Just because the punishment is imposed by statute does not mean that this Court should not decide how reprehensible, and, therefore, how deserving of punishment UCLC may be in this case. If UCLC had notice that its act of charging 8% would subject it to liability, then I might be inclined to agree that a statutory penalty of this magnitude would be justified. But UCLC did not have notice. The judgment in this case is akin to an ex post facto punishment. The defendant is being punished for conduct that even this State's highest court did not know was punishable with respect to this class of defendants. The similarity to BMW in this respect is striking.
I make these observations because I am concerned about the just application of § 5-19-4. I hope that on remand these comments will be shown to have been academic. The trial judge will supervise the final award of any damages and the appropriateness of the amount of that award.
For these reasons, I dissent.
MADDOX, J., concurs.
NOTES
[1] Section 5 of Act No. 96-576 provides: "The provisions of Section 5-19-11(b) are transferred to, and restated and amended in, Section 5-19-19(c). The remainder of Section 5-19-11 is repealed." Act No. 96-576 does not purport to make its transfer, amendment, and repeal of the provisions of § 5-19-11 retroactive.
[2] We have quoted § 5-19-1(1) as it read before it was amended by Act No. 96-576. That Act did not purport to make its amendment to this section retroactive.
[3] This is the usury statute cited in Ewell, and the earlier cited section of the constitution is the one cited in Ewell.