33 So.2d 457

## CITY OF MOBILE v. MERCHANTS NAT. BANK OF MOBILE.

### 1 Div. 298.

Supreme Court of Alabama.

Jan. 22, 1948.

Caffey, Gallalee & Caffey, of Mobile, for appellee.

Harry Seale, of Mobile, for appellant.

STAKELY, Justice.

This is an appeal from a decree of the equity court sustaining the demurrer to a cross-bill. On May 9, 1947, the Merchants National Bank of Mobile, as administrator and trustee under the will of Annie D. Baker, deceased, filed a bill of complaint against the City of Mobile, in which it sought to redeem several parcels of land from public improvement foreclosure sales. The sales were made on January 27, 1941. These parcels of land were owned by Annie D. Baker at the time of her death. In each instance the property was sold on foreclosure to the City of Mobile by the Register of the Circuit Court.

The gist of the action is the refusal of the City of Mobile to allow redemption for less than the amount paid on the sale plus an amount equal to interest at 15% per annum on such purchase price from the date of the sale to the date of redemption. The complainant alleges the right to redeem under § 562, Title 37, Code of 1940, but offers to do equity and asks the court to determine the amount necessary to redeem and for other specific and general relief, including a declaratory judgment. The court overruled the demurrer to the original bill. The City of Mobile then set up by way of answer and cross-bill that at the time the assessments were levied and bonds issued the rate was 15%, "and the City of Mobile in issuing these bonds pledged to the prompt payment thereof when the bonds should become due, the interest collectible at the rate of 15% on redemption from the foreclosure of the assessments referred to." It is alleged that the bonds have been refunded twice, in 1936 and on January 1, 1941, and that all revenues pledged to the original bonds were pledged to the refunding bonds. It is further alleged in substance that the legislature cannot reduce the interest collectible on redemption without the consent of the bondholders without impairing contractual obligations contrary to constitutional provisions. Demurrer was sustained to the cross-bill, as aforesaid, and hence this appeal.

At the time the original bonds were issued to finance construction of the improvements, the rate of 15% per annum was the rate as fixed by act of the legislature where redemption is sought. Acts 1927, pp. 753, 771, § 50. An Act of the Extra Session of 1932, p. 272, reduced the rate to 10%. In 1939 the rate was reduced to 8%. Acts 1939, p. 354, § 1. The Act of 1939 was in force when the foreclosure sales were made on January 27, 1941. We set out enough of the Act of 1939 to make the matter under discussion understandable. "Any real property heretofore or hereafter sold for the satisfaction of a local improvement assessment lien imposed thereon by the governing body of a municipality may be re-

deemed by the former owner, or his assigns, or other person authorized to redeem property sold for taxes by the State of Alabama, within two years from the date of such sale, by paying to the purchaser at such sale or to any person deraigning title under such purchaser, or to the city treasurer for such purchaser or person deraigning title under such purchaser, the amount of the purchase price for which the property was sold at such sale plus an amount equal to interest on such purchase price from the date of such sale to the date of redemption at the rate of eight per centum per annum plus a fee of two dollars to cover the expense of a conveyance."

The Code of 1940 went into effect May 31, 1941, containing § 562, Title 37, which is the same as the act of 1939 in the paragraph under discussion, except that the rate of interest is further reduced to 6 percent per annum.

In issuing the refunding bonds the City of Mobile pledged to the holders thereof all revenues pledged on the issuance of the original bonds. It is insisted that since the purpose and intention of the refunding bonds was not payment, but simply renewal or extension of the original debt, all pledges given as security for the original debt will be carried forward as security for the debt as extended or renewed. Bank of Oakman v. Thompson, 224 Ala. 87, 139 So. 238. Accordingly it is further claimed that the legislature had no power to impair the pledge or the remedy for its enforcement. Sections 22 and 95 of the Constitution of 1901; Howard v. State ex rel. McGarry, 226 Ala. 215, 146 So. 414.

It is further argued that the position of appellant is recognized and substantiated by the statute which appears as § 287, Title 37, Code of 1940, the pertinent portion of which is as follows: " * * * The holders of all refunding and funding bonds issued under the provisions of this article, whether such bonds shall have been delivered in exchange for the indebtedness refunded or funded thereby, or shall have been sold and the proceeds thereof applied to the retirement of such indebtedness, shall be subrogated to all the rights and powers of the holders of such indebtedness, unless otherwise expressly provided in the ordi-nance or resolution authorizing the issuance of such refunding or funding bonds. * * *"

It is pointed out that the validity of the last-mentioned statute has been upheld by this court. Lang v. City of Mobile, 239 Ala. 331, 195 So. 248.

As we interpret the pleadings the allegations of the cross-bill on demurrer present the question as to the right of the legislature to reduce the rate of 15% in the face of § 287, Title 37, Code of 1940, and in the light of constitutional provisions relating to impairment of contractual obligations. If the legislature did not have the right to make the reduction, the cross-bill must stand. If on the contrary the legislature had such right, the cross-bill must fall. In this latter event the question whether the rate of 8% or 6% should prevail, it seems to us, should be determined on the issues made by the original bill and answer.

■■ We do not think that the question of the right to reduce the rate of interest should be confused by the issuance of the refunding bonds or the presence of § 287, Title 37, Code of 1940. The language of this statute clearly shows that the holders of the refunding bonds shall have the same rights as the holders of the original bonds. Accordingly the true inquiry should be whether the legislature could change the rate so as to affect the holders of the original bonds. In approaching this question, it must be conceded that the statutes pursuant to which the bonds were issued, entered into the contract between the city and the bondholders. Moore v. Howard, 227 Ala. 219, 149 So. 249. Those statutes provided a rate of 15% where redemption is sought. To solve the problem we should first consider the fundamental nature of the 15% charge.

■■ The statute says that the redemptioner shall pay in addition to the amount of the purchase price for which the property was sold, "an amount equal to interest, * * * at the rate of." Obviously the redemptioner is not a debtor who is making payment for the use of money or for forbearance in the ordinary sense. 61 C.J. p. 1516. On the contrary the charge is added,

among other things for neglect to pay the assessment with resulting sale for satisfaction of the assessment. A rate higher than the legal rate of interest, which is what we are here concerned with, is clearly a penalty, even though imposed without definition or name.

" * * * The usual rate is 6 per cent., which is also the legal rate of interest (R. S., art. 5070), but other and higher rates are provided for certain tax delinquencies, which make the latter clearly penal impositions. * * *

"Our interpretation and construction that 'interest' is imposed as a penalty in our tax statutes is one consistent with the rule which obtains generally. * * *" Jones v. Williams, 121 Tex. 94, 45 S.W.2d 130, 136, 79 A.L.R. 983. See also New York v. Jersawit, 263 U.S. 493, 44 S.Ct. 167, 68 L.Ed. 405; In re Ashland Emery & Carundum Co., D.C., 229 F. 829; City of St. Joseph v. Forsee, 110 Mo.App. 237, 84 S.W. 1138; Litchfield v. Webster County, 101 U.S. 773, 25 L.Ed. 925; Words and Phrases, Vol. 31, Perm.Ed., page 607; Jones v. Williams, supra, is cited with approval in State v. Clarke, 240 Ala. 362, 199 So. 543.

Since it appears that a rate in excess of the lawful rate of interest is a penalty, what is the right of the legislature to remit such excess? The answer is that "a mere penalty never vests, but remains executory; the repeal of a statute before a penalty is enforced is not a deprivation of vested rights." 23 Am.Jur. p. 632. And "The power of the legislature to remit a penalty is too well settled to admit of controversy." 25 C.J., page 1213, § 156; 36 C. J.S., Fines, § 18. See also Pope v. Lewis, 4 Ala. 487; Owen v. Peebles, 42 Ala. 338; Broughton v. Branch Bank, 17 Ala. 828; U. S. v. Morris, 10 Wheat. 246, 6 L.Ed. 314.

But the case here is complicated by the fact that the city made a contract with the original bondholders whereby it pledged to them as part of their security interest at the rate of 15% per annum on the purchase price collectible on redemption as then provided by the statute. This does not, however, change the situation. There are some things which are not included within the constitutional contract impairment clauses. A penalty imposed by statute is one of those things. Though the contract between the city and the bondholders dealt with the penalty, the penalty was not due by contract but by the statute. The State of Maryland etc. v. Baltimore & Ohio R. R. Co., 3 How. 534, 11 L.Ed. 714; 12 Amer.Jur. p. 36. And there is nothing in the statutes pledging the penalties as security for the bonds.

The situation here is quite analogous to the situation where redemption from a mortgage foreclosure is sought and there has been a reduction by statute in the interest on the purchase price since the mortgage was executed. In the case of Conn. Mutual Life Ins. Co. v. Cushman, 108 U.S. 51, 2 S.Ct. 236, 244, 27 L.Ed. 648, the Supreme Court of the United States said: "The statute, in force when the mortgage was executed, prescribing the rate of interest which the amount paid or bid by the purchaser should bear, as between him and the party seeking to redeem, had no relation to the obligation of the contract between the mortgagor and the mortgagee. * * * The rights which the purchaser at the decretal sale, if one was had, were not of the essence of the mortgage contract, but depended wholly upon the law in force when the sale occurred. The company ceased to be a mortgagee when its debts were merged in the decree, or, at least, when the sale occurred. Thenceforward its interest in the property was as purchaser, not as mortgagee. And to require it, as purchaser, to conform to the terms for the redemption of the property as prescribed by statute at the time of purchase, does not, in any legal sense, impair the obligation of its contract as mortgagee. It assumed the position of a purchaser, subject, necessarily, to the law then in force defining the rights of purchasers."

If under the common law an unenforced penalty can be remitted such rule would enter into the contract. The bondholders had just as much knowledge and notice of such principle of the common law as they did of the provisions of the statute. Home Building & Loan Ass'n. v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413, 88 A.L.R. 1481. The bondholders were bound to know that the 15% penalty existing at

the time of their contract, would not necessarily exist at a later date. This principle has been well stated by the Supreme Court of the United States as follows:

"One whose rights, such as they are, are subject to state restrictions, cannot remove them from the power of the state by making a contract about them. The contract will carry with it the infirmity of the subject-matter." Hudson County Water Co. v. McCarter, 209 U.S. 349, 28 S.Ct. 529, 531, 52 L.Ed. 828, 14 Ann.Cas. 560.

We think that enough has been said to justify the ruling of the court in sustaining the demurrer to the cross-bill.

Affirmed.

GARDNER, C. J., and FOSTER and LAWSON, JJ., concur.