On Application For Rehearing
The opinion of August 21, 1998, is withdrawn, and the following opinion is substituted therefor.
On May 15, 1996, Evan Allen Smith and Ed Smith sued Alfa Financial Corporation to recover, as damages, interest they had paid on a loan that they claimed violated Ala. Code 1975, §5-19-22(a) ("No creditor . . . shall engage in the business of making consumer loans . . . without first having obtained a license for each location in Alabama from the administrator"). On May 20, 1996, Act No. 96-576, Ala. Acts 1996, amending Chapter 19 of Title 5 of the Code, became effective. (Most of that Act is now codified as Ala. Code 1975, § 5-19-1 et seq., hereinafter referred to as "the Mini-Code"). Act No. 96-576, § 2, in its amendment to §5-19-19 provided that "[n]o private cause of action exists against a creditor for failing to obtain a license required by Section5-19-22." The Act further provided, at § 4: "The amendments to [§] 5-19-19, except subsections (a)(1)(ii) and (e) [which are not relevant to the resolution of this action], . . . are retroactive and are to be applied to consumer credit transactions entered into on, before, and after the effective date of this act."
Alfa moved for a judgment on the pleadings, asserting that under the May 20, 1996, amendments to the Mini-Code, the Smiths had no right to file this action. Alfa further asserted that even if the Smiths had a cause of action they could not recover the full amount of the interest they had paid. The Smiths argued that the last sentence of Art. IV, § 95, of the Constitution of Alabama of 1901 ("After suit has been commenced on any cause of action, the legislature shall have no power to take away such cause of action. . . ."), prevented the Legislature from barring their action by its amendment of § 5-19-19(b). The Smiths also argued that the measure of their damages was the amount of the interest they had paid Alfa. The trial court granted Alfa's motion and entered a *Page 852 
judgment for Alfa. The Smiths appealed to the Court of Civil Appeals, which, in a 3-2 decision, reversed. Smith v. AlfaFinancial Corp., 762 So.2d 843 (Ala.Civ.App. 1997). We granted Alfa's petition for certiorari review.
Act No. 96-576 made its provisions severable:
 "Section 7. The provisions of this act are severable. It hereby is declared to be the intent of the Legislature that if any part of this act, including without limitation any section, subsection or subpart, or the application thereof to any person or circumstance is declared invalid or unconstitutional, that declaration shall not affect the part which remains or the application of this act to any other person or circumstance."
In Derico v. Duncan, 410 So.2d 27 (Ala. 1982), an action was commenced on what this Court determined had been, before Act No. 96-576 was enacted, a viable cause of action. This Court determined that the Legislature had enacted the Mini-Code for "regulation" and for "protection" of the public, especially the consumer/debtor, 410 So.2d at 30, and, finding in the legislation no remedy for Derico (a consumer/debtor), it applied a rule the Court had "always held to be the law in Alabama, [that] whenever regulation and protection are the goal of a statute, contracts made in derogation of that statute are null, void, and unenforceable." 410 So.2d at 31. The fact that Ala. Code 1975, §5-19-11, which was part of the Mini-Code as it read in 1990, provided a remedy for the wrong done a consumer/debtor by a creditor's violation of § 5-19-22(a), did not abolish the consumer/debtor's cause of action, but changed the remedy so as to allow the consumer/debtor to recover for "actual damage" sustained as a result of the creditor's violation of § 5-19-22(a). Ala. Acts 1990, Act No. 90-384. Farmer v. Hypo Holdings, Inc.,675 So.2d 387 (Ala. 1996).
Because, in this present case, an action had been commenced on a viable cause of action, a cause of action that existed before the enactment of § 5-19-19(b), which took away a consumer/debtor's private cause of action against a creditor for failing to obtain a license under § 5-19-22, we conclude that to apply § 5-19-19(b) in this action would violate the last sentence of § 95 of the Constitution ("After suit has been commenced on any cause of action, the legislature shall have no power to take away such cause of action. . . .").
We are not persuaded by Alfa's argument (citing Scheuing v.State, 177 Ala. 162, 59 So. 160 (1912)) that § 5-19-19 of the Mini-Code, as amended in 1996, merely changed the form of the remedy. Before § 5-19-19 became law, the Smiths had a cause of action. Derico v. Duncan, supra; Johnson v. Alabama Power Co.,664 So.2d 877 (Ala. 1995). After § 5-19-19 became law, the Smiths would not have had a cause of action. Therefore, to apply §5-19-19 to the Smiths would violate the last sentence of § 95 of the Constitution ("After suit has been commenced on any cause of action, the legislature shall have no power to take away such cause of action. . . .").
Nor are we persuaded by Alfa's argument (citing City ofMobile v. Merchants National Bank of Mobile, 250 Ala. 159,33 So.2d 457 (1948)) that the consumer/debtor had, by the cause of action existing before the enactment of § 5-19-19, only the right to recover a penalty and that the Legislature has the power to remit a penalty because the right to a mere penalty never vests but remains executory.
The Smiths allege in their complaint that Alfa lent money to them on two occasions. This allegation is not an allegation of a civil wrong or a breach of contract, of any kind. They further allege that Alfa charged them interest on these loans and that Alfa did not have a license, as required by § 5-19-22, to charge the interest. Alfa contends that even if the 1990 version of the Mini-Code applies, instead of the 1996 amended version, the *Page 853 
Smiths are not entitled to recover, because, Alfa says, they have not alleged that they sustained "actual damage." If a consumer/debtor pays a creditor interest that the creditor is not legally authorized to charge, has that consumer/debtor incurred "actual damage"?
It is well settled that when it is interpreting a statute this Court seeks to give effect to the intent of the Legislature, as determined primarily from the language of the statute itself.Beavers v. County of Walker, 645 So.2d 1365, 1376 (Ala. 1994) (citing Ex parte McCall, 596 So.2d 2 (Ala. 1992)); Volkswagen ofAmerica, Inc. v. Dillard, 579 So.2d 1301 (Ala. 1991). Also, our rules of statutory construction direct us to look at the statute as a whole to determine the meaning of certain language that is, when viewed in isolation, susceptible to multiple reasonable interpretations. McRae v. Security Pac. Hous. Servs., Inc.,628 So.2d 429 (Ala. 1993).
Section 5-19-11(b), as it read in 1990, made an unlicensed creditor liable for "actual damage sustained by [the consumer/debtor]." After considering the arguments made in the briefs and at oral argument, we think the answer to the question of what "actual damage" means breaks down into two main possibilities: it means either 1) all of the interest paid to an unlicensed creditor (the "unjust-enrichment" interpretation), or 2) the difference between the amount of interest actually paid to the unlicensed creditor and some lower amount of interest that could have been paid to a licensed creditor (the "difference-in-interest" interpretation).
Section 5-19-11, as it read in 1990, provided:
 "(a) No creditor under this chapter shall bring an action on any consumer debt for collection, and no judgment by default or otherwise shall be entered until the creditor shall file an affidavit stating that:
 "(1) If the creditor is required to obtain a license under section 5-19-22, the creditor has obtained such a license, and
 "(2) The debtor, or one of the debtors who also is a defendant under the action, if a resident of this state, on information and belief of creditor is a resident of the county in which the action is filed. If the creditor has not obtained the required license or if one of the debtors is not a resident of the county in which such action is filed, the action shall be abated. The provisions of section 5-19-11(a)(1), above, and the phrase `the creditor has not obtained the required license or if' in the preceding sentence shall not apply in any manner whatsoever to any creditor not required to obtain a license under the provisions of sections 5-19-22, 5-19-31 or other provision of this chapter.
 "(b) Except where other specific remedies are provided in this chapter for violations of specific provisions of this chapter in which event such remedies shall apply, any provision of a consumer credit transaction which violates the provisions of this chapter shall be unenforceable by the creditor to the extent, but only to the extent, of such violation, and the other remaining provisions and agreements shall not be affected by such violation. Any creditor who fails to comply with any requirement imposed under this chapter with respect to any person is liable to such person for the actual damage sustained by such person as a result of the failure.
 "(c) Nothing in this section shall limit or affect the powers of the administrator provided in this chapter."
We note that the Legislature used the words "actual damage sustained by [the consumer/debtor]," as opposed to making a general statement like "amount unjustly received by the creditor" or, more specifically, "interest paid to the creditor." It appears that the Legislature intended that in determining the amount of "actual damage" a court was to focus on the consumer/debtor's *Page 854 
loss, not on the creditor's gain. This difference is significant, because it would have been quite simple for the Legislature to make clear an intent to force an unlicensed creditor to forfeitall of the interest it had received — it could have done this by merely replacing the words "actual damage sustained by such person as a result of the failure" with the words "interest paid by such person."
The Smiths argue that the only thing the phrase "actual damage" could possibly mean is all of the interest paid to the unlicensed creditor. However, this argument turns out to be a detriment to the Smiths' position. If "actual damage" can mean only "all of the interest," then one would have to ask why the Legislature did not just say "interest paid." The fact that the Legislature, in using the words it used, took a more difficult path indicates that the meaning of "actual damage" is more complex, that it refers to more than the simple phrase "interest paid."
Also, when viewed as a whole, § 5-19-11 appears to have as its goal to place all the parties in the position they would have been in if the creditor had been licensed. The section provides an avenue for an unlicensed creditor to sue a defaulting consumer/debtor, by obtaining what a proper creditor would have — a license. § 5-11-19(a)(1). In the same way, then, the "difference-in-interest" interpretation stated above would be harmonious with this remedial process. Under this interpretation, the creditor is placed in the proper position and the consumer/debtor would end up paying only that amount of interest that is "proper" — that amount he or she would have paid to a licensed creditor, assuming there was a licensed creditor that charged less interest.
Therefore, we hold that the Legislature intended for the phrase "actual damage," as it is used in § 5-19-11, to mean the difference between the amount of interest actually paid to an unlicensed creditor and some lower amount of interest that could have been paid to a licensed creditor, and any other actual out-of-pocket expense incurred by the consumer/debtor resulting from the creditor's failure to be licensed. The burden is on the consumer/debtor to prove his or her actual damage.
The Smiths' complaint alleges that they "have been damaged in the amount of interest charged on the consumer loans from the defendants as the defendants were not licensed under . . . § 5-19-22
and thus had no right to impose interest charges against the plaintiffs." The Smiths seek a judgment in an amount "equal to the interest charges on the consumer loans," plus costs, attorney fees, and any other appropriate relief. The Smiths do not specifically allege that, had Alfa been licensed, they would have paid Alfa less interest, or no interest, or that another creditor, properly licensed, would have charged less interest, or no interest, on similar loans. For this reason, the trial court concluded that the Smiths had failed to make a cognizable claim for relief and granted Alfa's motion for a judgment on the pleadings.
However, when it is considering a motion for a judgment on the pleadings, the trial court must review the pleadings filed in the case, and only if the pleadings show that no genuine issue of material fact is presented should the trial court enter a judgment for the moving party. See Rule 12(c), Ala.R.Civ.P.; B.K.W.Enterprises, Inc. v. Tractor Equipment Co., 603 So.2d 989 (Ala. 1992). A motion for a judgment on the pleadings is designed to provoke a search of the pleadings for the purpose of determining whether there is an issue of fact that requires the introduction of proof. Warren v. Rasco, 457 So.2d 399 (Ala. 1984).
We conclude that the pleadings in this case do indicate a factual dispute with respect to the issue of the Smiths' alleged damage. By alleging that the measure of their damages is the total amount of interest they paid to Alfa, the Smiths necessarily *Page 855 
claim any lesser amount that may be deemed excessive (i.e., an amount equal to the difference between the amount of interest Alfa actually charged and some lower amount of interest that a licensed creditor would have charged). In this respect, we note that Alfa moved only for a partial judgment on the pleadings in seeking to avoid repayment of any interest not deemed excessive.
The judgment on the pleadings is due to be reinstated to the extent it holds that the Smiths can recover only an amount equal to the difference between the amount of interest Alfa actually charged and some lesser amount of interest that a licensed creditor would have charged. The judgment of the Court of Civil Appeals is, therefore, reversed, and the case is remanded for the entry of a judgment consistent with this opinion.
APPLICATION GRANTED; OPINION OF AUGUST 21, 1998, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED.
Hooper, C. J., and Cook, See, and Johnstone, JJ., concur.
Lyons and Brown, JJ., concur in part and dissent in part.
Maddox, J., recuses himself.