802 So.2d 190 (2001)
George WATKINS
v.
BOARD OF MANAGERS OF the CITY OF BIRMINGHAM RETIREMENT AND RELIEF SYSTEM and Firemen's & Policemen's Supplemental Pension System.
1992215.
Supreme Court of Alabama.
May 11, 2001.
*191 J. Gusty Yearout and John G. Watts of Yearout, Myers & Traylor, P.C., Birmingham, for appellant.
Michael M. Fliegel, asst. city atty., Birmingham (rehearing brief filed by James D. Love and Patricia Cole Burns, asst. city attys., Birmingham), for appellees.

On Application for Rehearing
HOUSTON, Justice.
The opinion of February 9, 2001, is withdrawn, and the following is substituted therefor.
George Watkins, a retired police officer for the City of Birmingham, sued the board of managers of the City of Birmingham Retirement and Relief System and the board of managers of the City of Birmingham Firemen's and Policemen's Supplemental Pension System (hereinafter referred to together as the "System").[1] Watkins alleged that the System had violated the Alabama Code by requiring him to obtain credit-life insurance as security for the repayment of money he had borrowed from the System.[2] The trial court granted the System's summary-judgment motion, stating that no genuine issue of material fact existed. Watkins appealed, asserting that the trial court erred in entering the summary judgment for the System, because, he argues, "at a minimum, a fact question existed as to whether credit life insurance was required on the loan[s] in question." We reverse and remand.

Facts
George Watkins served approximately 21 years as a police officer for the City of Birmingham. Watkins obtained a pension loan from the System, using his paycheck as security for the loan. When Watkins retired, he had not yet repaid the balance. The System provided Watkins with a form that listed three options for repaying the loan: (1) to repay the balance in full; (2) to continue repayment by changing his group-life-insurance policy to list the System as the primary beneficiary; or (3) to pledge another form of security that would be acceptable to the deputy director of finance. Watkins signed a form that he alleges already had an "X" marked beside option two. As an employment benefit, the City of Birmingham paid the premiums on a $50,000 life-insurance policy for Watkins; however, once he retired, the City would stop paying on that policy. Thus, in order to secure the loan, Watkins continued the policy into his retirement period, listed the System as the primary *192 beneficiary, reduced the policy coverage to $25,000, and agreed to pay the premiums himself.[3]
Watkins alleged in his complaint that the System had required him to obtain the credit-life-insurance policy in violation of Ala.Code 1975, § 5-19-20(a) ("With respect to any consumer credit transaction, the creditor shall not require any insurance other than insurance against loss of or damage to any property....").

The Mini-Code
Chapter 19 of Title 5 of the Code, commonly referred to as "the Mini-Code," applies to "substantially all consumer credit transactions in Alabama." Ala.Code 1975, § 5-19-1.1(1). "Credit transaction" is defined as "[a] loan or credit sale made by a creditor." § 5-19-1(9). The Code defines "[c]reditor" as "[a] person who regularly extends or arranges for the extension of credit for which the payment of a finance charge is required, whether in connection with loans, sales of property or services, or otherwise." § 5-19-1(3).
Watkins argues that a genuine issue of material fact exists and, therefore, that the trial court improperly entered the summary judgment in favor of the System. Specifically, he contends that when the court entered the summary judgment there was a question of fact as to whether the System had required him to obtain credit-life insurance in violation of § 5-19-20(a) of the Mini-Code.
The System argues that the Mini-Code does not apply to the transaction with Watkins because, it says, the transaction was not a "credit transaction" as defined by the statute. The System contends that it did not lend Watkins money; instead, it claims, it merely advanced Watkins his retirement benefits.
However, we conclude that because the transaction at issue in this case entailed the System's giving Watkins money and Watkins's repaying that amount with 6% interest, the transaction was indeed a loan. The Court of Civil Appeals has defined "loan" as "a sum of money lent at interest." Edwards v. Alabama Farm Bureau Mut. Cas. Ins. Co., 509 So.2d 232, 235 (Ala.Civ.App.1986) (quoting American Heritage Dictionary of the English Language 413 (1981)). Black's Law Dictionary 947 (7th ed.1999) defines "loan" as "A thing lent for the borrower's temporary use; esp., a sum of money lent at interest." Additional support for this conclusion includes the enabling legislation authorizing the System to extend credit to eligible employees; that legislation characterizes this credit-extension as a "participant loan." 1973 Ala. Acts, Act No. 1272, Art. VII (Reg.Session).
The System also argues that the Mini-Code does not apply to the transaction with Watkins because, it argues, it is not a "creditor" because, it says, it does not "regularly extend" credit to the City's employees. (See § 5-19-1(3), quoted above.) The record indicates that the System makes over 100 loans each year to a select and limited group of persons (qualified current and retired employees of the City of Birmingham).[4] Therefore, despite *193 the fact that the System makes not many more than 100 loans a year, we must conclude, given the small group of persons eligible to obtain such loans, that the System's pattern of making loans is a "regular" practice.
Thus, we conclude that the Mini-Code applies to Watkins's transaction with the System.

Summary Judgment
The trial court granted the System's summary-judgment motion, based on its conclusion that "there is no genuine issue of material fact." (R. 821.) The standard of appellate review applicable to a ruling on a motion for summary judgment is clear:
"When reviewing a ruling on a motion for a summary judgment, this Court applies the same standard that the trial court used `in determining whether the evidence before the court made out a genuine issue of material fact.' Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988). When a party moving for a summary judgment makes a prima facie showing that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). `Substantial evidence' is `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala.1989). In reviewing a ruling on a motion for a summary judgment, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Renfro v. Georgia Power Co., 604 So.2d 408, 411 (Ala.1992)."
City of Orange Beach v. Duggan, 788 So.2d 146, 149 (Ala.2000).
The System made a prima facie showing that no genuine issue of material fact existed. The document showing Watkins's election to obtain credit-life insurance supported the System's argument that he freely chose that option over the other two repayment methods. Furthermore, Kimberly Pate, an assistant benefits administrator for the System, who Watkins says assisted him in completing this document, testified in her deposition as follows:
"Q: Have you ever handed a retiring or terminating employee a document ... with option number 2 already checked?
"A: No.
"Q: And have you ever told anybody since the time you began working for the City that they had to take option number 2?
"A: No."
(R. 779.)
However, when the burden shifted to Watkins, he presented substantial evidence creating a genuine issue of material fact. According to Watkins's affidavit, which was before the trial court, Pate told Watkins that he "had to maintain a $25,000.00 policy of life insurance with the first beneficiary being the [System]." (R. 192.) Watkins also filed in the trial court his interrogatory answers, in which he stated: "[Pate told me that the] director of finance required retirees to maintain $25,000 ... in City life insurance which is only provided through Protective Life Insurance *194 Company and to sign a beneficiary card making the pension system a primary beneficiary." He also said, "She also presented a form to me that had already been completed for my signature which said that I elected to maintain the insurance. She said that I had to either sign the form or pay the loan off." (R. 197.)
Nothing in the record indicates the System ever objected to these statements or that the trial court struck from the record the documents containing those statements.
Therefore, because Watkins presented substantial evidence creating a genuine issue of material fact as to whether the System required him to purchase the credit-life-insurance policy, we reverse the summary judgment in favor of the System. We remand the case for the fact-finder to determine that issue.
OPINION OF FEBRUARY 9, 2001, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; REVERSED AND REMANDED.
SEE, LYONS, BROWN, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
MOORE, C.J., dissents.
MOORE, Chief Justice (dissenting).
I must respectfully dissent. While I agree that Title 5, Chapter 19 of the Code of Alabama 1975"the Mini-Code"applies to creditors, such as the System, who make loans as a regular practice, I cannot agree with the reversal of the summary judgment in favor of the defendants.
The trial court held that Watkins had failed to present substantial evidence creating a genuine issue of material fact whether the System had forced him to obtain insurance as security for repayment of the pension loan. Watkins's complaint states that, on the day of the retirement exit interview with Kim Pate, he was forced to maintain a $25,000 insurance policy to secure the repayment of $12,000 in outstanding debt. The evidence presented by the System clearly demonstrates that Watkins had incurred a debt of only approximately $4,500 by the day of the retirement exit interview. His pension checks were, at that time, sufficient to continue making monthly payments toward repayment of the loan. Significantly, Watkins was already being required by the order of a domestic-relations court to maintain life insurance for the benefit of his children. He may have violated the court order by naming the System as the primary beneficiary, but he was nevertheless being compelled to maintain the insurance before he had the encounter with Pate. It was not until two weeks after the retirement exit interview that Watkins borrowed the maximum amount of funds allowed to him, thus incurring the full $12,000 debt to the System.
The only evidence Watkins submitted to the trial court was his own testimony, in the forms of an affidavit and interrogatory answers, alleging that he was forced to carry the insurance in order to obtain the loan. Watkins's testimony conflicts with his complaint; it is not possible that Watkins could have been forced to carry the insurance policy in order to ensure the repayment of $12,000 debt, because most of that debt had not yet been incurred. Additionally, he was already obligated to carry life insurance, by an order of a domestic-relations court. I agree with the trial court that Watkins failed to present substantial evidence creating a genuine issue of material fact; I would affirm the summary judgment in favor of the defendants.
NOTES
[1] Watkins also named as defendants Protective Life Insurance Company and Mac Underwood, director of finance for the City of Birmingham. The trial court granted the parties' joint stipulation to dismiss Protective Life. The court granted Underwood's summary-judgment motion.
[2] Watkins also alleged that the System had violated Ala.Code 1975, § 5-19-22(a), by making consumer loans without being licensed to do so. This action was filed before the Legislature repealed Ala.Code 1975, § 5-19-11(b), which permitted private lawsuits for creditors' violations of the licensing requirement. In Ex parte Alfa Financial Corp., 762 So.2d 850 (Ala.1999), this Court held that under Ala.Code 1975, § 5-19-11(b), a consumer could have recovered as damages the difference between the amount of interest actually paid to an unlicensed creditor and some lower amount of interest that the consumer could have paid to a licensed creditor. Alfa, 762 So.2d at 854. The System charged Watkins interest of 6% per annum.
[3] Watkins repaid the loan plus the interest. Accordingly, he canceled the policy, which had been issued by Protective Life Insurance Company.
[4] The deposition testimony of Kimberly Pate, an assistant benefits administrator employed by the System, includes this exchange:

"Q: Do you know the number of loans that are made in a year? Do you have any estimate?
"A: No, I don't.
"Q: Would it be at least over a hundred?
"A: Probably.
"Q: And I'm not just talking about people who retire, but just everybody in the City who is eligible, do you think that would probably be over a hundred?
"A: Yes."
(R. 780.)