964 So.2d 66 (2007)
L.L.M.
v.
J.M.T.
2050744.
Court of Civil Appeals of Alabama.
March 30, 2007.
*68 D. Milborn Gross, Jr., and Jonathan W. Pippin of Ables Baxter, Parker & Hall, P.C., Huntsville, for appellant.
Stephanie W. Werdehoff of Werdehoff & Werdehoff, Huntsville, for appellee.
THOMAS, Judge.
L.L.M. ("the mother") appeals from a circuit court judgment setting aside as void for lack of subject-matter jurisdiction a juvenile court judgment that adjudicated J.M.T. to be the father of D.L.T. ("the child"), awarded the mother sole physical custody of the child, and ordered J.M.T. to pay child support.
The parties were never married; they lived together from 2002 to 2004. In 2003, the mother gave birth to D.L.T.J.M.T. acknowledged paternity of the child, pursuant to the provisions of the "hospital paternity acknowledgment program," set forth in § 26-17-22, Ala.Code 1975, and his name appears as the name of the child's father on the child's birth certificate.
The parties separated on May 16, 2004. The following day, J.M.T. filed a complaint in the Madison Circuit Court, alleging that he was the legal father of the child, seeking custody of the child, and requesting pendente lite custody and child support from the mother. One week later, the mother filed a petition in the Madison Juvenile Court, requesting that that court establish paternity of the child, award her custody of the child, and order J.M.T. to pay child support.
On June 18, 2004, the parties appeared in the circuit court, stipulated that J.M.T. was the "legal and biological father" of the child, and presented evidence with respect to which party should be awarded custody pendente lite. On June 22, 2004, the circuit court awarded J.M.T. custody pendente lite. However, because there were custody proceedings pending in both the circuit court and the juvenile court, the circuit court requested the parties to file briefs with respect to which court had subject-matter jurisdiction of the case. The circuit court also requested the juvenile court judge to make a recommendation concerning subject-matter jurisdiction. Following its receipt of the parties' briefs and the juvenile judge's recommendation, the circuit court, on September 13, 2004, entered the following order:
"To the extent allowed by law to do so, this case is transferred to the Juvenile Court Division of the District Court of Madison County, Alabama, for proper adjudication of those claims presented herein."
*69 On November 4, 2004, the juvenile court entered a judgment adjudicating J.M.T. to be the father of the child, awarding the parties joint legal custody of the child and the mother sole physical custody of the child, and ordering J.M.T. to pay $376 per month in child support. The mother filed a postjudgment motion on November 16, 2004; the juvenile court denied that motion on November 22, 2004. J.M.T. filed an untimely notice of appeal on December 7, 2004; his appeal was subsequently dismissed.
On January 20, 2005, J.M.T. filed in the circuit court a complaint that he designated as a "Collateral Attack on Void Judgment for Lack of Subject Matter Jurisdiction, Petition to Reinstate Action to Court's Calendar, and Petition for Custody," alleging that the juvenile court did not have subject-matter jurisdiction to "establish paternity," pursuant to § 12-15-31(2), Ala.Code 1975, because, he said, his paternity had already been "established" and was not in dispute. The mother answered, asserting, among other defenses, waiver, the doctrine res judicata, and collateral estoppel. On J.M.T.'s motion, the circuit court entered a partial summary judgment, holding that the juvenile court's November 4, 2004, judgment was void for lack of subject-matter jurisdiction and reinstating J.M.T.'s custody petition to the circuit court's active docket. The circuit court made that judgment final pursuant to Rule 54(b), Ala. R. Civ. P., on February 17, 2006. The mother filed a postjudgment motion on March 17, 2006, which the circuit court denied on April 25, 2006, with an order that states, in pertinent part:
"The Order of Transfer to the Juvenile Court . . . was made by this Court based on what this Court now feels to have been a mistake of law regarding the jurisdiction of this Court to hear the case as originally filed by [J.M.T.]. Said decision was made by this Court based on the fact that the parties were unmarried, and that the issue of paternity was disputed, in that an action had been filed by [the mother] in the Juvenile Court . . ., which this Court understood to present a bona fide dispute as to the paternity of the parties' minor child. However, this court now understands from the representations of counsel that there was no bona fide dispute regarding the issue of paternity of the parties' minor child, either in the case before this Court (the issue was resolved and stipulated into the record at the pendente lite hearing held before this Court), nor in the underlying case in the Juvenile Court. . . . The existence of a disputed issue of paternity between unmarried parties was the sole basis on which this Court's Order of Transfer was made to the Juvenile Court. . . . This Court now feels that said Order of Transfer was based on this Court's mistake of law, and while this Court certainly regrets said mistake, finds that as a result, the Order on Paternity, Custody and Support entered by the Juvenile Court . . . was without subject matter jurisdiction; and as a further result, the Order on Paternity, Custody and Support entered by the Juvenile Court on November [4], 2004, is void."
The mother filed a timely notice of appeal on June 6, 2006.
The mother argues that the circuit court correctly transferred the case to the juvenile court because, she says, the juvenile court had exclusive original jurisdiction to adjudicate the paternity of the child pursuant to § 12-15-31(2), Ala.Code 1975 (providing that the juvenile court shall have exclusive original jurisdiction "[i]n proceedings to establish paternity of a child born out of wedlock"), and, thereafter, to decide the issues of custody and child support *70 pursuant to § 12-15-30(b)(1), Ala. Code 1975 (providing that the juvenile court shall exercise exclusive original jurisdiction of "[p]roceedings to determine custody . . . of a child when the child is otherwise before the court").
J.M.T. contends that there was no paternity dispute to adjudicate because, he says, his paternity of the child had already been established by virtue of his acknowledgment of paternity. He argues that the acknowledgment itself constituted a determination of paternity sufficient to eliminate the juvenile court's subject-matter jurisdiction over the case and to activate the circuit court's general civil subject-matter jurisdiction. In addition, J.M.T. argues that his acknowledgment was "res judicata" as to the matter of the child's paternity. Further, he maintains that when the parties stipulated, in open court during the circuit court's pendente lite hearing, that there was no factual dispute as to paternity, the circuit court was presented with a basis for determining that there was no issue requiring adjudication in the juvenile court.

Discussion
Because the issue in this appeal turns largely on the effect of J.M.T.'s acknowledgment of paternity in the hospital following the birth of the child, we quote, in its entirety, the statute providing for a "hospital paternity acknowledgment program." Section 26-17-22 provides:
"(a) The natural mother and father of a child born to a woman who was unmarried at the time of birth and had not been married or attempted to be married within 300 days prior to the birth may, at any time and place prior to the child's 19th birthday, state and acknowledge that they are the natural parents of the child in an affidavit of paternity signed by both parties before a notary public. Before a mother and a putative father sign an acknowledgment of paternity, the mother and the putative father shall be given notice, orally and in writing, of the alternatives to, the legal consequences of, and, if one parent is a minor, any rights afforded due to minority status, and responsibilities that arise from signing the acknowledgment. The affidavit shall be on a form prescribed by rule of court and shall include the Social Security number and current address of each parent, a listing of the rights and responsibilities of acknowledging paternity, including the duty to financially support the child, and instruction for filing the affidavit with the Office of Vital Statistics.
"(b) The affidavit of paternity shall be a legally sufficient basis for establishing an obligation for child support and for the expenses of the mother's pregnancy and confinement. The affidavit may be admitted as evidence of paternity in any action to establish a support order or an adjudication of paternity.
"(c) Hospitals that have a licensed obstetric care unit or are licensed to provide obstetric services or licensed birthing centers associated with a hospital shall provide to the mother and alleged father, if he is present in the hospital, during the period immediately preceding or following the birth of a child to an unmarried woman in the hospital, all of the following: (1) Written materials about paternity establishment. (2) Form affidavits of paternity for the purposes of subsection (a) above. (3) A written description of the rights and responsibilities of acknowledging paternity. (4) An opportunity, prior to discharge from the hospital, to speak with a trained person made available through the Department of Human Resources, either by telephone or in person, who *71 can clarify information and answer questions about paternity establishment. The Department of Human Resources shall make materials available without cost to the hospitals. If the mother and father complete the affidavit in the hospital, the hospital shall send the affidavit of paternity to the Office of Vital Statistics with required birth certificate information within five days of the birth of the child. Hospitals may be reimbursed by the Department of Human Resources up to the amount allowable by federal regulations for each completed affidavit. A hospital shall be immune from civil or criminal liability for actions taken pursuant to the requirements of this section.
"(d) The Office of Vital Statistics shall offer the mother and the alleged father paternity acknowledgment services as specified in this section.
`(e) Notwithstanding any law to the contrary, an affidavit of paternity completed in accordance with this section shall be accepted by the Office of Vital Statistics for purposes of listing the father's name on the child's birth certificate.
"(f) If a birth certificate has been filed in the Office of Vital Statistics, listing a father of the child, no new birth certificate can be established by the Office of Vital Statistics based on an affidavit of paternity received subsequently by that office unless a determination of paternity has been made by a court of competent jurisdiction or following adoption.
"(g) The affidavit of paternity shall be considered a confidential record and access shall be available in the same manner as birth records. The affidavit of paternity shall not be subject to the provisions of Section 22-9A-12(c) and shall be released by the Office of Vital Statistics to the Department of Human Resources upon request by the department and payment of any fee required by the Office of Vital Statistics for the purpose of child support enforcement or any other lawful purpose without the necessity of a court order.
"(h) A signed voluntary acknowledgment of paternity completed in accordance with this section shall be considered a legal finding of paternity subject to the right of any signatory to rescind the acknowledgment within the earlier of 60 days or the date of an administrative or judicial proceeding relating to the child including a proceeding to establish a support order in which the signatory is a party.
"(i) After the 60-day period, a signed voluntary acknowledgment of paternity may be challenged in court only on the basis of fraud, duress, or material mistake of fact with the burden of proof upon the challenger, and the legal responsibilities, including child support obligations, of any signatory arising from the acknowledgment may not be suspended during the challenge except for good cause shown.
"(j) An acknowledgment of paternity executed in another state under Title IV-D of the Social Security Act shall be entitled to full faith and credit in this state."
(Emphasis added.) The statute provides a relatively simple and straightforward procedure for the voluntary acknowledgment of parentage following the birth of a child in a hospital. Pursuant to subsection (e), a man who signs an affidavit of paternity in compliance with the requirements of § 26-17-22 shall be listed as the child's father on the child's birth certificate. The acknowledgment also has other legal consequences, namely: pursuant to subsection (b), it is a "legally sufficient basis for establishing an obligation for child support" *72 and may be admitted in evidence in any child-support or paternity proceeding; pursuant to subsection (h), it is "considered a legal finding of paternity"; and, pursuant to subsection (i), it is open to challenge after 60 days "only on the basis of fraud, duress, or material mistake of fact."

The "Establishment of Paternity" Argument
Relying on the emphasized portions of subsections (b) and (h) of § 26-17-22, J.M.T. argues that his paternity acknowledgment "established" the parent-child relationship between him and the child within the meaning of § 12-15-31(2)(providing that the juvenile court shall have exclusive original jurisdiction "[i]n proceedings to establish paternity of a child born out of wedlock")(emphasis added), thereby making a judicial determination of paternity by the juvenile court  or by any other court  unnecessary. We disagree.
In interpreting a statute we "must look at the entirety of the pertinent statutory language." Federal Res. Bank of Atlanta v. Thomas, 220 F.3d 1235, 1239 (11th Cir.2000)(holding that the court must examine "the full phrase `all suits of a civil nature at common law or in equity,' not just the words `at common law or in equity'"). "`We do not look at one word or term in isolation but instead we look to the entire statutory context.'" Id. (quoting United States v. DBB, Inc., 180 F.3d 1277, 1280 (11th Cir.1999)).
Subsection (h) states that "[a] signed voluntary acknowledgment of paternity completed in accordance with this section shall be considered a legal finding of paternity." In order to determine the meaning of the phrase "a legal finding of paternity" in subsection (h), we must examine all parts of § 26-17-22 that relate to the legal effect of a signed voluntary acknowledgment of paternity.
"`[O]ur rules of statutory construction direct us to look at the statute as a whole to determine the meaning of certain language that is, when viewed in isolation, susceptible to multiple reasonable interpretations. McRae v. Security Pac. Hous. Servs., Inc., 628 So.2d 429 (Ala.1993).'
"Ex parte Alfa Fin. Corp., 762 So.2d 850, 853 (Ala.1999).
"`"When interpreting a statute, [a court] must read the statute as a whole because statutory language depends on context. . . . "'
"Ex parte USX Corp., 881 So.2d 437, 442 (Ala.2003)(quoting Bean Dredging, L.L.C. v. Alabama Dep't of Revenue, 855 So.2d 513, 517 (Ala.2003))."
State Farm Mut. Auto. Ins. Co. v. Motley, 909 So.2d 806, 813-14 (Ala.2005). Subsection (b) states:
"The affidavit of paternity shall be a legally sufficient basis for establishing an obligation for child support and for the expenses of the mother's pregnancy and confinement. The affidavit may be admitted as evidence of paternity in any action to establish a support order or an adjudication of paternity."
J.M.T. focuses on the phrase "a legally sufficient basis for establishing an obligation" in the first sentence of subsection (b). He ignores the second sentence, which states that an affidavit of paternity "may be admitted as evidence of paternity in any action to establish a support order or an adjudication of paternity."
Reading subsections (b) and (h) together, as we must, it is clear to this court that the legislature intended to make a signed voluntary acknowledgment of paternity admissible in evidence and sufficient in itself to support a judgment of paternity. We find no indication, however, that by enacting *73 § 26-17-22, the legislature intended to divest the juvenile court of its jurisdiction to "establish [the] paternity of a child born out of wedlock," § 12-15-31(2), in those instances in which an alleged, reputed, or presumed father has signed an acknowledgment of paternity in conformity with § 26-17-22.
"Jurisdiction may be divested by a repeal of the statute which conferred jurisdiction. However, for a statute to divest a court of jurisdiction, the legislature must declare its intent to create divestiture explicitly and clearly.
21 C.J.S. Courts § 97 (2006) (footnotes omitted).

The "Res Judicata" Argument
J.M.T.'s signed voluntary acknowledgment of paternity has no res judicata effect because the doctrine of res judicata applies to a judgment rendered by a court. See Dairyland Ins. Co. v. Jackson, 566 So.2d 723, 725-26 (Ala.1990)(holding that "[t]he elements of res judicata, or claim preclusion, are (1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both suits").
Citing Ex parte K.N.L., 872 So.2d 868, 869 n. 1 (Ala.Civ.App.2003), J.M.T. argues that this court has previously indicated that an acknowledgment of paternity executed in conformity with § 26-17-22 is "res judicata" as to the matter of paternity. In K.N.L., the parents of the child had never been married. They lived together for six years and then separated, agreeing that the child would live with W.D.P., the father, in Alabama during the school year and with K.N.L., the mother, in Pennsylvania during the summer. This court's opinion dealt with the mother's petition for a writ of mandamus to stay a custody proceeding in the juvenile court, based on the mother's argument that the Soldiers' and Sailors' Civil Relief Act barred further litigation until she returned from an overseas military assignment.
Before we reached the merits of the mother's petition, this court recounted the procedural history of the case: the father had petitioned the juvenile court for sole physical custody of the child and for child support from the mother, and the mother had filed a "contest of paternity," alleging that W.D.P. was not the child's biological father and requesting that the court order paternity testing. This court then made the following statement:
"[T]he juvenile court determined, based on an affidavit of paternity signed by the parties, that the issue of paternity was precluded by the doctrine of res judicata;1 therefore, the court denied the mother's request for paternity testing.
"1See § 26-17-22(h), Ala.Code 1975 (`[a] signed voluntary acknowledgment of paternity completed in accordance with this section [the "hospital paternity acknowledgment program"] shall be considered a legal finding of paternity . . . ')."
872 So.2d at 869. Our stating the juvenile court's rationale for its denial of paternity testing was not a holding, or an implicit approval, of the basis for the juvenile court's ruling. J.M.T.'s reliance on K.N.L. for the proposition that a signed voluntary acknowledgment of paternity bars litigation of the issue of paternity under the doctrine of res judicata is misplaced.

The "Stipulation" Argument
The parties were entitled to stipulate to the fact that there was no dispute that J.M.T. was the child's father. The circuit court, however, was not entitled to conclude that it had subject-matter jurisdiction of this case because, it thought, the *74 parties' stipulation had obviated the need for the juvenile court to make a formal adjudication of paternity. By reaching that conclusion, the circuit court, in effect, allowed a stipulation to divest the juvenile court of the subject-matter jurisdiction conferred on it by the legislature.
Whether a court has subject-matter jurisdiction is a question of law, Ex parte Terry, 957 So.2d 455 (Ala.2006), and courts are not bound to accept as controlling stipulations regarding questions of law, Swift & Co. v. Hocking Valley Ry. Co., 243 U.S. 281, 289-90, 37 S.Ct. 287, 61 L.Ed. 722 (1917)(stating that "[i]f the stipulation is to be treated as an agreement concerning the legal effect of admitted facts, it is obviously inoperative, since the court cannot be controlled by agreement of counsel on a subsidiary question of law"). "`[S]ubject-matter jurisdiction . . . cannot be waived or conferred by consent.'" Haley v. Barbour County, 885 So.2d 783, 788 (Ala.2004)(quoting Patterson v. Gladwin Corp., 835 So.2d 137, 142-43 (Ala.2002)).
We have already held that J.M.T.'s prior acknowledgment of paternity neither "established" his paternity within the meaning of § 12-15-31(2) nor had any "res judicata" effect. We now hold that the parties' stipulation did not provide a basis for the circuit court to exercise jurisdiction of this case.

The Basis of the Juvenile Court's Subject-Matter Jurisdiction
Section 12-15-31(2) provides that a juvenile court shall have exclusive original jurisdiction "[i]n proceedings to establish paternity of a child born out of wedlock." Section 12-15-30(b)(1) provides that the juvenile court shall exercise exclusive original jurisdiction of "[p]roceedings to determine custody . . . of a child when the child is otherwise before the court."
"`"`"[S]ections of the Code dealing with the same subject matter are in pari materia. As a general rule, such statutes should be construed together to ascertain the meaning and intent of each."'" State v. Amerada Hess Corp., 788 So.2d 179, 183 (Ala. Civ.App.2000)(quoting New Joy Young Rest., Inc. v. State Dep't of Revenue, 667 So.2d 1384, 1387 (Ala.Civ.App. 1995), quoting in turn Locke v. Wheat, 350 So.2d 451, 453 (Ala.1977)).'" Holmes v. Macon County Bd. of Educ., [Ms. 2050967, December 29, 2006] ___ So.2d ___, ___ (Ala.Civ.App.2006)(quoting Gartman v. Limestone County Bd. of Educ., 939 So.2d 926, 929 (Ala.Civ.App.2006)).
Reading § 12-15-31(2) and § 12-15-30(b)(1) in pari materia, it is evident that the legislature intended that the juvenile court have exclusive original subject-matter jurisdiction to make a paternity adjudication with respect to a child born out of wedlock, after which  and as a consequence of which  the juvenile court has subject-matter jurisdiction to decide related issues with respect to the care, custody, and control of the child who is already before the court. In sum, the legislature has provided that the juvenile court is the only court with jurisdiction to adjudicate the paternity of a child born out of wedlock,[1] and it has also provided that a paternity adjudication is the mechanism by which the juvenile court's jurisdiction to decide other matters relating to the child is triggered. Neither this court nor the *75 circuit court has the power to enlarge or diminish the subject-matter jurisdiction conferred by the legislature on the juvenile court. See C.D.S. v. K.S.S., 963 So.2d 125 (Ala.Civ.App.2007).
In the present case, the juvenile court made a formal determination of paternity, after which it determined issues of custody and support relating to the child who was before it. The juvenile court had subject-matter jurisdiction to render the judgment of November 4, 2004. The circuit court erred when it set aside that judgment as void. We therefore reverse the judgment of the circuit court and remand the cause to that court with instructions to vacate its order setting aside the judgment of the juvenile court.
REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN, J., concur.
BRYAN, J., dissents, with writing, which MOORE, J., joins.
BRYAN, Judge, dissenting.
I respectfully dissent. The parties' factual stipulation in the circuit court that J.M.T. was the biological and legal father of the child eliminated any issue of fact regarding paternity. The elimination of any issue of fact regarding paternity, in turn, authorized the circuit court to determine, as a matter of law, that L.L.M.'s claim seeking a determination regarding paternity was moot. Because that claim was moot, it could not confer jurisdiction upon the juvenile court.
"It is well settled that the judiciary of Alabama is not empowered `"to decide moot questions, abstract propositions, or to give advisory opinions, however convenient it might be to have these questions decided for the government of future cases."' Stamps v. Jefferson County Bd. of Educ., 642 So.2d 941, 944 (Ala.1994) (quoting Town of Warrior v. Blaylock, 275 Ala. 113, 114, 152 So.2d 661, 662 (1963)) (emphasis omitted). "`[I]f a case has become moot, or [if a] judgment would not accomplish an end recognized as sufficient in law, there is no necessity for the judgment, the court will decline to consider the merits, and [the court] will dismiss the case."' Hornsby v. Sessions, 703 So.2d 932, 938 (Ala.1997) (quoting Chisolm v. Crook, 272 Ala. 192, 194, 130 So.2d 191, 193 (1961)) (emphasis added)."
Ex parte Connors, 855 So.2d 486, 488 (Ala. 2003).
Consequently, I would affirm the circuit court's determination that the juvenile court did not have subject-matter jurisdiction.
MOORE, J., concurs.
NOTES
[1] The exceptions to this rule are that the circuit court has "jurisdiction over issues of paternity within a divorce action," Ex parte Jones, 896 So.2d 553, 555 (Ala.Civ.App.2004); see also Floyd v. Floyd, 701 So.2d 1151 (Ala. Civ.App.1997), and has jurisdiction over issues of paternity within a wrongful-death action, see Valley Forge Ins. Co. v. Alexander, 640 So.2d 925 (Ala.1994).